## Case No. 4,189.

### DURANT v. IOWA COUNTY.

[1 Woolw. 69.] [1]

Circuit Court, D. Iowa. May Term, 1864.

Mr. Edmunds, for plaintiff.
Mr. Templin, for defendant.

MILLER, Circuit Justice. The demurrer to the first plea must be sustained. The real debt incurred by the county was the principal sum named in the bonds. The coupons attached to the bonds were promises to pay the annual instalments of interest. Their form, and the fact that they might be detached from the principal obligation, do not change their character. They do not form part of the debt, any more than would a provision for interest yet to accrue incorporated in the body of the bond. If the defendant's counsel were correct in his position, the bonds when issued were legal, because it is not pretended that the amount secured by them exceeded the 5 per centum of the value of the taxable property in the county; but by lapse of time, as the interest has come due and remained unpaid, they and their incidents, the coupons, have become illegal. The absurdity is manifest.

The section of the constitution relied on, by its terms refers us to the time when the bonds were issued, to determine whether their amount exceeds the limit prescribed in it. There is no pretence for saying that the interest thereafter to accrue was a debt within the meaning of the section.

The demurrer to the second plea presents a question of more difficulty. Were it of the first impression, I should incline to sustain the plea. Considerations which appear to me just support that view. But the authorities are the other way, and I feel constrained to submit to them.

It must now be considered as settled, that bonds and coupons of the character now under consideration, possess all the qualities of commercial paper. They pass by delivery; the holder of them has a full title; and the county cannot set up against one who has taken them in good faith equities which might be available against the original payee, providing they were not utterly void in their inception. Moran v. Commissioners of Miami County, 2 Black [67 U. S.] 722; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83; Gelpeke v. Dubuque, Id. 176, 206; Murry v. Landner, 2 Wall. [69 U. S.] 110.

The question of the effect upon commercial paper of judicial proceedings has most frequently arisen in cases of garnishment, by which process the maker of such paper has been sought to be held for some debt of the payee. The general current, and decidedly the weight of authority, is in favor of

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

the doctrine that such process is inoperative, in respect of such paper. Thus in Kieffer v. Ehler, 18 Pa. St. (6 Harris) 388, Lowrie, J., speaking for the court, says, that such securities "have a legal quality which renders the hold of an attachment upon them very uncertain. Unlike all other property, they carry their whole evidence on their face, and the law assumes the right of him who obtains them, for a valuable consideration, by regular indorsement, and without actual notice of any adverse claim, or of such suspicious circumstances as would lead to inquiry. . . . It has always been held that an attachment is unavailable against a bona fide holder, for value, of negotiable paper, who obtained it after attachment, without notice and before maturity." See, also, Winston v. Westfeldt, 22 Ala. 760, and Drake, Attachm. § 577 et seq., where many cases are cited.

The principle on which these cases proceed is equally applicable to cases in equity, when the same object is sought by means of an injunction and decree. In Murry v. Lylburn, 2 Johns. Ch. 444, Chancellor Kent holds, that a lis pendens is notice, to an assignee of a bond and mortgage, of a latent equity in a third person; but at the same time expresses the opinion, that "the safety of commercial paper would require the limitation of the rule," so far as not to extend to commercial paper not due. And in Stone v. Elliott, 11 Ohio St. 252, the question came up in precisely the form it does here. A bill in chancery had been filed by judgment creditors or the holder of the note, and before its transfer a decree was had against the maker, to compel its payment to the complainants; and yet that decree was held to be no defence to an action brought by a subsequent bona fide holder, without notice and for value. In a well-considered opinion, it was held, that the doctrine of lis pendens did not apply to negotiable paper before due.

It is insisted that, in this view, proceedings to enjoin the transfer of such securities are futile. Not so. An injunction will prevent the transfer of the securities during the pendency of the suit, and a decree that they be delivered up to be cancelled, if enforced at once, will protect the parties. A neglect to take out an injunction, or to enforce such a decree, is the fault of the plaintiff, not of the law.

The demurrer to the second plea must be sustained.

The defendant, at a subsequent day in the term, amended its second plea, by alleging that the plaintiff had, at the time he became the owner and holder of the coupons sued on, full knowledge of the proceedings in the suit in equity. To this amended plea the plaintiff demurred.

MILLER, Circuit Justice. The effect of the plea is to charge the plaintiff with actual knowledge of the pendency of the suit to avoid the bonds and coupons. He then purchased with notice of the rights of the defendant. He is not an innocent and bona fide purchaser of the paper, and is entitled to no protection as such. He can occupy no better position than his vendor or indorser.

The plea as amended is good, and the demurrer must be overruled.

Demurrer overruled.