## COUNTY OF WARREN *v.* MARCY.

1. The court reaffirms its former decisions that where, after a preliminary proceeding, such as a popular election, a county had lawful authority to issue its bonds, and they were issued, bearing upon their face a certificate by the officer, whose primary duty it was, to ascertain the fact, that such proceeding had taken place, a *bona fide* holder of them for value before maturity has a right to assume that such certificate is true.
2. The bonds are not, in the hands of such a holder, rendered invalid by the fact that such proceeding was so defective that a suit to prevent their issue should be, and, on appeal to the Supreme Court of the State, ultimately was, sustained against the county officers, nor by the fact that they were issued after such a suit had been brought, and were by him purchased during its pendency.
3. The rule that all persons are bound to take notice of a suit pending with regard to the title to property, and that they, at their peril, buy the same from any of the litigating parties, does not apply to negotiable securities purchased before maturity.
4. The considerations which exclude the operation of that rule to such securities apply to them, whether they were created during the suit or before its commencement, and to controversies relating to their origin or to their transfer.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This was an action brought in the court below by George O. Marcy, the defendant in error, against the County of Warren, to recover the amount of certain coupons, originally attached to certain bonds of the said county, bearing date Jan. 25, 1871. These bonds were in the following form:—

"UNITED STATES OF AMERICA.— STATE OF ILLINOIS.

"No. ——.]          *County of Warren.*          [$1,000.

"On the first day of July, in the year of our Lord one thousand eight hundred and ninety, the county of Warren, and State of Illinois, promises to pay to the Rockford, Rock Island, and Saint Louis Railroad Company, or bearer, the sum of $1,000, and interest thereon, at the rate of eight per cent per annum, payable annually, on the first day of July in each year, on presentation to the treasurer of said Warren County of the respective interest-coupons which are hereto severally adjoined.

" This bond is issued in conformity with the vote of the electors of said county, cast at an election held on the twenty-third day of September, A.D. 1869.

" In testimony whereof, and pursuant to the authority granted by law, and upon the order of the board of supervisors of said Warren County, passed at an adjourned session thereof, begun on the twenty-fifth day of January, A.D. 1871, I, clerk of the county court of said county, have hereunto signed my name as such clerk, and affixed the seal of said county court, this twenty-fifth day of January, A.D. 1871.

{ WARREN COUNTY COURT, }         " W. G. BONE,
{     ILLINOIS, SEAL.     }     " *Clerk of the County Court of Warren County.*"

A jury being waived, the court made a special finding of the facts, and thereupon found generally for the plaintiff, and rendered judgment in his favor. The county then brought the case here.

The principal facts of the case, as found by the court, are as follows : —

The Rockford, Rock Island, and St. Louis Railroad Company, having been chartered by an act of the legislature of Illinois, approved Feb. 16, 1865, a supplement to said charter was passed and approved on the 4th of March, 1869, whereby, amongst other things, it was enacted (by sect. 6) that any incorporated city, town, village, or county, through which said railroad might pass, or which might be situated on or near the line thereof, might subscribe to the capital stock of the company any sum not exceeding $100,000, and might issue coupon bonds, not to run more than thirty years. To this enactment was appended the following proviso : —

" *Provided,* that before said stock shall be subscribed, an election shall be held, in conformity to the laws in regard to ordinary State, city, county, or town elections, thirty days' notice first having been given, by publication in at least one newspaper in the county, and six public notices, printed or written, having been posted in six of the most public places therein during the time above named, and returns to be made in the usual way; at which election a majority of the legal voters, voting on the question, shall have voted in favor of said subscription; and to this end, the . . . board of supervisors . . . may from time to time order elections, specifying the amount proposed to be subscribed."

On the 25th of March, 1869, another act was passed and approved, entitled "An Act to authorize certain counties and towns therein named to subscribe stock in railroad companies."

The first section of this act authorized the counties of Rock Island, Mercer, Warren, McDonough, Schuyler, Cass, Scott, and Greene to purchase or subscribe for shares of the capital stock in any railroad company already organized, or thereafter to be organized, which should pass in whole or in part through the said counties, or any or either of them, to such an amount as any of said counties, or either of them, should determine and deem proper. The second section provided that such subscriptions might be made by an agent appointed by the board of supervisors, in counties that might adopt township organization (which it was conceded Warren County had done), upon such terms and conditions as the corporate authorities of any such county might prescribe; and for the payment of such stock the board were authorized to borrow money at interest not exceeding ten per cent, or to pay for the same in the bonds, orders, or warrants of the county, in sums not less than $100, to run not exceeding twenty years, at interest not exceeding ten per cent per annum. The fourth section directed that all such bonds, &c., should be issued by the clerk of the county court, under the seal of his office, upon the order of the county authorities, and the county clerk to make registration thereof, and certify the same on the bonds. The tenth section declared that no such subscription to stock should be made, unless the same was submitted to a vote of the people of such county, and should receive a majority of the votes cast; and that the question should be submitted in such manner as the county authorities might determine.

It is claimed by the defendant in error that the county of Warren derived authority to issue the bonds in question under the last-mentioned act. The road of the Rockford, Rock Island, and St. Louis Railroad Company was partially built north and south of Warren County before the election hereafter mentioned was held, and it was declared by the company that it would go through that county; and it is not disputed that it was, in fact, afterwards laid through the same as proposed.

The proceedings of the board of supervisors and county officers which resulted in the issue of the bonds were as follows : —

On the 23d of August, 1869, the board called an election of the people of the county to be held on Sept. 23, 1869, for the purpose of determining the question of a county subscription of $200,000 to the stock of said railroad company, including the $100,000 previously voted to the St. Louis, Alton, and Rock Island Railroad Company, claimed to have been transferred to the former company by virtue of an act of assembly passed in 1869. Notices of the election were not published until Aug. 27, 1869 (less than thirty days prior thereto), and some of those posted were not posted for the full period of thirty days, and in one township none were posted at all; but in all the others notices were published for periods varying from twenty to thirty days. The election was held pursuant to notice on the 23d of September, 1869; and one thousand seven hundred and seventy-five votes were cast for the subscription, and nine hundred and seventy-five against it, the total vote of the county at the last previous general election being four thousand seven hundred and thirty-one. The vote was duly canvassed, and filed in the clerk's office ; and on the 16th of March, 1870, the board declared that the election had resulted in favor of the subscription, and ordered its chairman to make the same accordingly.

On the 18th of July, 1870, one Harding, a tax-payer and citizen of the county, filed a bill in chancery, on behalf of himself and all other tax-payers, against the county officers and the railroad company, in the Circuit Court of Warren County, asking for an injunction to prevent the subscription of stock and the issue of bonds therefor, and that the proceedings of the board be set aside and declared void. The bill set forth the foregoing facts; and a temporary injunction was granted, but was subsequently dissolved on the 23d of January, 1871. The complainant prayed an appeal from the order dissolving the injunction, which was not granted; and the cause went to final hearing on the 2d of February, 1871, when the bill was dismissed. Thereupon the complainant appealed to the Supreme Court of the State. The cause having been heard at the first

term thereafter, the decree of the Circuit Court was reversed in 1873, and the cause remanded with directions to enter a decree for the complainant, according to the prayer of the bill. In accordance with these directions, a decree was duly entered in the Circuit Court.

Meantime, pending these proceedings, after the dissolution of the temporary injunction by the Circuit Court, and on the 25th of January, 1871, the bonds in question, to the amount of $200,000, in the form above set forth, were executed under the hand of the clerk of the board of supervisors of Warren County, by order of a majority of the board, at a meeting held on that day. They were then delivered by the clerk, as directed by the board, to the Rockford, Rock Island, and St. Louis Railroad Company, in payment of a subscription to the stock of said company, which purported to be made in March, 1870, in the name of the county, by the chairman of said board, in pursuance of the order of the board, before stated. They were registered in the office of the clerk of Warren County, and so certified by him Jan. 25, 1871, and were registered Jan. 27, 1871, in the office of the State auditor of public accounts, and so certified by him on the bonds.

The defendant in error subsequently became a purchaser of the coupons in question for value, before maturity, and without any actual notice of their alleged invalidity, or of any suit in relation thereto.

*Mr. George F. Harding* for the plaintiff in error.

The Constitution of Illinois of 1870 prohibits a county from becoming a subscriber to the capital stock of a railroad company, unless authorized by a vote of the people.

The notice for the election not having been given in compliance with the provisions of the act of March 4, 1869, the bonds are void.

The Supreme Court of Illinois, in *Harding* v. *Rockford, Rock Island, & St. Louis Railroad Co.* (65 Ill. 90), decided that those provisions were not repealed by the tenth section of the act of March 25, 1869.

The coupons here sued on were issued pending that suit, and it was a notice to purchasers of all matters in litigation, so as to affect and bind them. *Murray* v. *Ballou*, 1 Johns.

(N. Y.) Ch. 566; *Murray* v. *Lylburn*, 2 id. 441; 2 White &
Tudor's Leading Cases, 64; *Park* v. *Johnson*, 11 Wend. (N. Y.)
453.

That rule applies to personal as well as to real property, and
to personal property of every description. *McCutcheon* v. *Miller*, 31 Miss. 83; *Bishop of Winchester* v. *Paine*, 11 Ves. Jr.
200; *Same* v. *Beaver*, 3 id. 314; *Kellogg et al.* v. *Fancher et
al.*, 23 Wis. 1; *Scudder* v. *Van Amburgh*, Edw. (N. Y.).Ch. 30;
*Haddens* v. *Spaders*, 20 Johns. (N. Y.) 573; *McRary* v. *Fries*,
4 Jones (N. C.), Eq. 234; *Fletcher* v. *Ferrell*, 9 Dana (Ky.),
377; *Leitch* v. *Wells*, 48 Barb. (N. Y.) 650; *Murray* v. *Lylburn*,
*supra*.

The only exception to the rule is unmatured negotiable
paper, in existence when the suit was brought; but that exception cannot extend to paper executed *pendente lite*.

Mr. *Charles M. Osborn* and Mr. *Sanford B. Perry*, contra.

The statutes of 4th and 25th March, 1869, are ample authority to the county of Warren to subscribe for stock in the
Rockford, Rock Island, and St. Louis Railroad Company, and
to issue bonds, like those in question, in payment therefor, an
affirmative vote of the county having been first given in favor
thereof.

The board of supervisors was invested with full power to
submit to the voters of the county the question of subscribing
to the stock of the railroad company, and to decide whether
the election was properly held, and the majority vote cast in
favor of the subscription. The board having ordered the bonds
in question to be issued, with a recital therein that they were
issued in conformity with the vote of the electors of said county,
they are, in the hands of a *bona fide* holder for value, conclusive
proof that such an election was legally called and held, and
are binding on the county. *Commissioners of Knox·County* v.
*Aspinwall et al.*, 21 How. 539; *Bissell* v. *City of Jeffersonville*,
24 id. 287; *Moran* v. *Commissioners of Miami County*, 2 Black,
722; *Van Hostrup* v. *Madison City*, 1 Wall. 291; *Grand Chute*
v. *Winegar*, 15 id. 355; *Lynde* v. *The County*, 16 id. 6; *Kenicott*
v. *The Supervisors*, id. 452; *St. Joseph Township* v. *Rogers*, id.
644; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Marcy* v. *Town
of Oswego*, id. 637; *Humboldt Township* v. *Long et al.*, id. 642;

*County of Calloway* v. *Foster*, 93 id. 567 ; *Commissioners, &c.* v. *Thayer*, 94 id. 631; *Commissioners, &c.* v. *January*, id. 202, *Commissioners, &c.* v. *Clark*, id. 278; *Town of East Lincoln* v. *Davenport*, id. 801.

Such a holder is required only to ascertain whether the county was authorized by law to subscribe for stock in the railroad company named in the bonds, and to issue them in payment therefor. *Commissioners of Knox County* v. *Aspinwall*, *supra; Moran* v. *Commissioners of Miami County, supra; Mercer County* v. *Hacket*, 1 Wall. 83 ; *Meyer* v. *City of Muscatine*, id. 384; *Supervisors* v. *Schenck*, 5 id. 772; *Pendleton County* v. *Amy*, 13 id. 297 ; *Nugent* v. *The Supervisors*, 19 id. 241; *Lynde* v. *The County, supra; Kenicott* v. *The Supervisors, supra; Town of Coloma* v. *Eaves*, 92 U. S. 484; *County of Moultrie* v. *Savings Bank*, id. 631.

Such bonds, with the interest coupons attached, are in the hands of such a holder negotiable securities, having all the properties of commercial paper : *White* v. *Vermont & Massachusetts Railroad Co.*, 21 How. 575 ; *Moran* v. *Commissioners, &c., supra; Mercer County* v. *Hacket, supra; Gelpcke* v. *Dubuque*, 1 Wall. 175 ; *City of Lexington* v. *Butler*, 14 id. 282; *St. Joseph Township* v. *Rogers, supra; Humboldt Township* v. *Long et al., supra; Commissioners, &c.* v. *Clark, supra; Cromwell* v. *County of Sac*, 96 U. S. 51; and the doctrine of *lis pendens* is not applicable to them. *Leitch* v. *Wells*, 48 N. Y. 586 ; *Stone* v. *Elliott*, 11 Ohio St. 252; *Kieffer* v. *Ehler*, 18 Pa. St. 388; *Durant* v. *Iowa County*, 1 Woolw. 69 ; *Winston* v. *Westfeldt*, 22 Ala. 760 ; *National Bank of Washington* v. *Texas*, 20 Wall. 72; *Olcott* v. *Supervisors*, 16 id. 678 ; 2 Lead. Cas. in Eq. (ed. of 1877) 196 ; 2 Powell, Mortgages, 618.

MR. JUSTICE BRADLEY, after stating the case, delivered the opinion of the court.

It is insisted by the plaintiff in error that the bonds and coupons were void, for want of authority in the board of supervisors to issue them, in consequence of insufficient notice of the election. It must be conceded, however, that if the case is to be governed by the act of March 25, 1869, there was no defect in the proceedings. But it is insisted that the act of March 4,

1860, which prescribed a notice of thirty days, by publication in a newspaper, was still binding, and was not abrogated by the act of March 25, the tenth section of which provided that the question should be submitted in such manner as the county authorities might determine.

This was the very question raised before the State court in *Harding* v. *Rockford, Rock Island, & St. Louis Railroad Co.* (65 Ill. 90); and the Supreme Court of Illinois decided that the provisions of the act of March 4 were binding, and that the election was void for want of such published notice of thirty days.

The court considered that the object of the act of March 25 was to remove the limitation as to the amount of the subscription, and to change the time for the maturity of the bonds, as imposed by the act of March 4, but not to change the time or manner of giving notice of the election; and they conclude their opinion in the following words: —

" We are of opinion that the proviso to section six (6) of the act of 4th of March is not abrogated by section ten (10) of the subsequent act. Their reconciliation, in the manner we have attempted, will best subserve the public good; and the validity of both, thus reconciled, will make the legislation more in accordance with reason, shield the legislature from an absurdity, and prevent serious consequences.

"As the election was invalid for want of sufficient notice, there was no power to make the subscription, and none was conferred by the vote to issue the bonds."

If we accept this as the true construction of these statutes, the question then arises, whether, the bonds having been issued and acquired under the circumstances shown by the special findings of the Circuit Court, the defendant in error is entitled to recover. Is the county bound to pay the coupons in question to one who purchased them for value before maturity, and without any actual knowledge of the facts relied on to invalidate them, or of the pendency of the suit brought to have the proceedings declared void?

This involves two questions: 1. Are the bonds so absolutely void, as against the county, as to be invalid under all circumstances, even in the hands of a *bona fide* holder for value? 2. If

not, was the commencement and pendency of the suit for having the proceedings of the supervisors declared void, and preventing the issue of the bonds, such notice to all persons of their invalidity, as to defeat the title of a purchaser for value before maturity, having no actual notice of the suit, or of the objection to the bonds?

The first question is to be viewed in the light of the former decisions of this court. We have substantially held, that if a municipal body has lawful power to issue bonds or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has a right to assume that such preliminary proceedings have taken place, if the fact be certified on the face of the bonds themselves, by the authorities whose primary duty it is to ascertain it. *Commissioners of Johnson County* v. *January*, 94 U. S. 202; *Commissioners of Douglass County* v. *Bolles*, id. 104, 108; *Town of Coloma* v. *Eaves*, 92 id. 484, 488; *Lynde* v. *The County*, 16 Wall. 6. Now, that is the case here. The bonds are executed by the board of supervisors, or, which is the same thing, by their clerk, under their order and direction. They certify on their face that they are issued in conformity with the vote of the electors of said county, cast at an election held on the twenty-third day of September, 1869. This, according to the cases, is a sufficient authentication of the fact that an election was duly held, to protect a *bona fide* holder for value.

A similar defence, that the bonds were absolutely void for want of authority (and so declared by the State tribunals), in consequence of irregularity in the preliminary proceedings, was set up in the case of *Lee County* v. *Rogers*, 7 Wall. 181. That case arose in Iowa. A county election had been held to determine on the subscription of stock to a railroad, and the issue of bonds in payment thereof. A bill in equity was filed to prevent such subscription and issue, and was successful. The legislature then passed a healing act, and the bonds were issued. A year after this, another bill was filed to have both the act and the bonds declared void, but was dismissed. Two years after this dismissal, a bill of review was filed to reverse the last decree; and it was reversed, and the bonds and the healing act

itself were declared void. This court held that, notwithstanding all this, the *bona fide* holder of the bonds was entitled to recover upon them. It being contended that he was bound to take notice of the *lis pendens* for avoiding the bonds, the court held otherwise, on the ground that there was no continuous litigation. The first suit was determined before the issue of the bonds, and the second was not commenced until after they had been issued. No suit was pending when they were issued.

This case is an authority for the position that bonds of this sort may be valid in the hands of a *bona fide* holder, notwithstanding the fact that the preliminary proceedings requisite to their issue may have been so defective as to sustain a direct proceeding against the county officers to annul them or prevent their issue.

This brings us to the second question; namely, whether the pendency of the chancery suit for vacating the proceedings of the supervisors and preventing the issue of the bonds, in this case, was in itself constructive notice to all persons of their invalidity, or of the objections raised against them. This question has an important bearing upon the case; for, whilst the bonds may be valid in the hands of a *bona fide* purchaser before maturity, and without notice of any defect or vice in their origin, this cannot be said in reference to one who has such notice, or who is chargeable therewith.

It is a general rule that all persons dealing with property are bound to take notice of a suit pending with regard to the title thereto, and will, on their peril, purchase the same from any of the parties to the suit. But this rule is not of universal application. It does not apply to negotiable securities purchased before maturity, nor to articles of ordinary commerce sold in the usual way. This exception was suggested by Chancellor Kent, in one of the leading cases on the subject in this country, and has been confirmed by many subsequent decisions.

The learned Chancellor gave the history and grounds of the general doctrine of *lis pendens*, in 1815, in the case of *Murray* v. *Ballou* (1 Johns. (N. Y.) Ch. 566), which is the leading American case on the subject, and deserves the careful study of every

student of law. The fundamental proposition was stated in these words: " The established rule is, that a *lis pendens*, duly prosecuted, and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree; and the *lis pendens* begins from the service of the subpœna after the bill is filed." p. 576. That case related to land, with regard to which the doctrine is uniformly applied.

In the subsequent case of *Murray* v. *Lylburn* (2 id. 441), decided in 1817, the same doctrine was held to apply to choses in action (in that case, a bond and mortgage) assigned by one of the parties *pendente lite*. But the Chancellor, with wise prevision, indicated the qualification to which the rule should be subject in such cases. Speaking of the trustee, whose acts were in question, he said: " If Winter had held a number of mortgages, and other securities, in trust, when the suit was commenced, it cannot be pretended that he might safely defeat the object of the suit, and elude the justice of the court, by selling these securities. If he possessed cash, as the proceeds of the trust estate, or negotiable paper not due, or perhaps movable personal property, such as horses, cattle, grain, &c., I am not prepared to say the rule is to be carried so far as to affect such sales. The safety of commercial dealing would require a limitation of the rule ; but bonds and mortgages are not the subject of ordinary commerce; and they formed one of the specific subjects of the suit against Winter, and the injunction prohibited the sale and assignment of them, as well as of the lands held in trust."

Here we have the whole law on the subject. Subsequent cases have only carried it out and applied it. We shall cite only a few of the most important.

In *Kieffer* v. *Ehler* (18 Pa. St. 388), decided in 1852, it was held that, although a promissory note not due is liable to attachment under the Pennsylvania statute of 1836, relative to executions; yet such attachment is unavailable against a *bona fide* holder for value of a negotiable note, where it was obtained after the attachment was served on the maker of the note as garnishee, and after its return, but before the maturity of the note, and without actual notice of the attachment. Mr. Justice Lowrie, in that case, speaking of such instruments,

says: " They have a legal quality that renders the hold of an attachment upon them very uncertain.  Unlike all other property, they carry their whole evidence of title on their face; and the law assures the right of him who obtains them for valuable consideration, by regular indorsement, and without actual notice of any adverse claim, or of such suspicious circumstances as should lead to inquiry.  To hold that an attachment prevents a subsequent *bona fide* indorser for value from acquiring a good title, would be almost a destruction of one of the essential characteristics of negotiable paper."  He admits that the negotiation of such paper by a defendant after he had notice of the attachment would be a fraud upon the law; but he suggests the remedy, namely, that the court should exert its power to prevent it, by requiring the instrument to be placed in such custody as to prevent it from being misapplied, — a remedy analogous to that of injunction and sequestration by a court of chancery.

In a subsequent case in Pennsylvania, that of *Diamond* v. *Lawrence County* (37 id. 353), it is true, the same court held the purchaser of county bonds *pendente lite* to be affected with constructive notice; but placed its decision specially on the ground that, in Pennsylvania, such bonds are not deemed negotiable securities.

The case of *Winston* v. *Westfeldt*, which came before the Supreme Court of Alabama in 1853 (22 Ala. 760), is directly in point, and was decided upon great consideration and after exhaustive arguments by counsel.  The note sued on, at the time of its purchase by the plaintiff, was the subject of controversy in the chancery court; and the question was, whether the proceedings operated as notice to him, " or, in other words," says the court, " does the doctrine of *lis pendens* apply to negotiable paper?"  And the decision was, that it does not.  The arguments of the counsel, as well as the judgment of the court, in this case, are very instructive; but we forbear to accumulate further quotations.

Suffice it to say, that the same doctrine is held and adjudged in *Stone* v. *Elliott*, 11 Ohio St. 252; *Mims* v. *West*, 38 Ga. 18; *Durant* v. *Iowa County*, 1 Woolw. 69; and *Leitch* v. *Wells*, 48 N. Y. 585, overruling same case in 48 Barb. 637.  The case of

*Durant* v. *Iowa County* was decided by Mr. Justice Miller, and related to coupons attached to county bonds, being parallel to the case now under consideration, except that the coupons had been issued before the *lis pendens* was instituted. Justice Miller, in this case, meets the objection that the rule may operate to defeat the action of the court by withdrawing from its jurisdiction the subject-matter of the controversy. He says: " It is insisted that, in this view, proceedings to enjoin the transfer of such securities are futile. Not so. An injunction will prevent the transfer of the securities during the pendency of the suit, and a decree that they be delivered up to be cancelled, if enforced at once, will protect the parties. A neglect to take out the injunction, or to enforce the decree, is the fault of the plaintiff, not of the law."

In the present case, an injunction was issued, and, so long as it was in force, was obeyed by the board of supervisors. The Circuit Court saw cause to dissolve the injunction, it is true, and eventually dismissed the bill; and it was not till two years afterward that the Supreme Court reversed this decree. Whether the Circuit Court did right in dissolving the injunction without dismissing the bill (which was emphatically an injunction bill); or whether the complainant ought not, at once, to have submitted to a dismissal, taken an appeal, and adopted the necessary proceedings for a continuance of the injunction, — it is unnecessary now to inquire. It cannot be said that the court was destitute of power to maintain its own jurisdiction and protect its suitors. If it did not choose to exert this power, and any failure of justice ensued, it is to be attributed to that inherent imperfection to which the administration of all human laws is liable. At all events, the evil is no greater than that which would befall the innocent purchasers of the bonds, if the loss should be made to fall upon them. From this dilemma there is no escape, unless we abrogate the privileges of commercial paper, and make it the duty of those who take it to inquire into all its previous history and the circumstances of its origin. This would be to revolutionize the principles on which the business of the commercial world is transacted, and would require a new departure in the modes and usages of trade.

The only thing calculated to raise any doubt, in the present case, is the fact that the bonds in question were not in existence when the suit to prevent their issue was brought. But we see no good reason for limiting the exception to paper or securities previously in existence. The court, as we have seen, has ample power, by injunction, to prevent their execution; and the reason of the exception is as applicable to the one class as to the other. Its object is to protect the commercial community by removing all obstacles to the free circulation of negotiable paper. If, when regular on its face, it is to be subject to the possibility of a suit being pending between the original parties, its negotiability would be seriously affected, and a check would be put to innumerable commercial transactions. These considerations apply equally to securities created during, as to those created before the commencement of, the suit; and as well to controversies respecting their origin, as those respecting their transfer. Both are within the same mischief, and the same reason.

This very question was involved in *City of Lexington* v. *Butler*, 14 Wall. 283. In that case, irregularities had occurred in the preliminary proceedings, and the city authorities refused to issue the bonds. A *mandamus* was applied for by the railroad company, for whose use the bonds were intended; and a judgment of *mandamus* was rendered, to compel the city to issue them, and it issued them accordingly. Subsequently, this judgment was reversed by the Court of Appeals of Kentucky, and an injunction was obtained to prevent the railroad company from parting with the bonds. The injunction was not obeyed; the bonds were negotiated whilst proceedings were still pending, and were purchased by the plaintiff for value before maturity, without any knowledge of these circumstances. This court held that the bonds were valid in his hands. The point in question received no discussion in the opinion of the court, it is true; but it appeared on the pleadings, was made in the argument, and must have been passed upon in arriving at the judgment.

Whilst the doctrine of constructive notice arising from *lis pendens*, though often severe in its application, is, on the whole, a wholesome and necessary one, and founded on principles

affecting the authoritative administration of justice; the exception to its application is demanded by other considerations equally important, as affecting the free operations of commerce, and that confidence in the instruments by which it is carried on, which is so necessary in a business community. The considerations that give rise to the exception apply with full force to the present case.

We think that the result reached by the Circuit Court was correct.

*Judgment affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE FIELD, and MR. JUSTICE HARLAN dissented.

NOTE. — In *County of Warren* v. *Post* and *County of Warren* v. *Portsmouth Savings Bank*, error to the Circuit Court of the United States for the Northern District of Illinois, which were argued at the same time and by the same counsel as was the preceding case, MR. JUSTICE BRADLEY, in delivering the opinion of the court, remarked: These cases are in all respects similar to that of *County of Warren* v. *Marcy*, and must have the same result.

The judgments therein are respectively

*Affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE FIELD, and MR. JUSTICE HARLAN dissented.