## C. A. STEVENS and others *v.* THE RAILROADS.

*(Circuit Court, W. D. Tennessee.* September 18, 1880.)

1. CHANCERY PRACTICE—DISMISSAL BY THE PLAINTIFF WITHOUT PREJUDICE.—The plaintiff will not be allowed to voluntarily dismiss his bill "without prejudice to the bringing of another suit," unless the circumstances are such that the court would, upon final hearing, permit the bill to be so dismissed.

2. SAME—SAME—EXCEPTIONS TO THE GENERAL RULE.—The right of a plaintiff to dismiss his bill upon payment of the costs, at any time before a hearing on the merits, is not an absolute and unqualified right. It will not be allowed when, by so doing, the plaintiff will prejudice the defendant; but this injury must be of a character different from the mere ordinary inconveniences of double litigation, which, in the view of the law, are compensated by costs, and must deprive the defendant of some substantive right not available in a second suit, or that may be endangered by the dismissal.

3. SAME—SAME—CASE IN JUDGMENT.—This exception is not confined to rights acquired by some order or decree entered in the case. It may arise out of any proceeding in it, and may be based on the nature of the defence, the condition of the pleadings, the agreement of the parties, or any circumstance appearing in the record which shows that it would be inequitable to allow the dismissal. Thus, where the defendant pleaded an estoppel, which, if established, would amount to a defeasance of a lien claimed by the plaintiff on his property, and which it was the object of the bill to enforce, and it appearing that this defence could be endangered by a transfer of the lien after dismissal, the plaintiffs were not allowed to dismiss.

4. NEGOTIABLE BONDS—LIS PENDENS.—The exception in favor of negotiable paper to the ordinary rule of *lis pendens*, has no application to a suit commenced to enforce a collateral lien created by third persons upon property not belonging to the debtor, and now in the hands of strangers to the obligation of the bonds. The controversies about the lien are independent of and collateral to those controversies about the negotiable securities which are included in the exception.

In Equity.

*L. & E. Lehman,* for plaintiffs.

*Wright, Folkes & Wright, James Fentress,* and *E. C. Waethall,* for defendants.

HAMMOND, D. J. These causes were called for trial at the regular call of the docket, and set for hearing, by consent of parties, for September 6, 1880. On that day the plaintiffs moved to dismiss their suits upon payment of the costs, "with-

out prejudice to the bringing of another suit, at law or in equity, concerning any of the matters involved therein." The defendants resist this motion, and deny that the plaintiffs can dismiss at all, because by the record it appears that they have acquired rights by the defences they set up, as against these plaintiffs, which would be prejudiced by the dismissal. It is needless, in our view of the case, to state the facts relied on by defendants to take the case out of the ordinary rule allowing a plaintiff to dismiss at pleasure, because the plaintiffs do not ask to dismiss generally, but only without prejudice. It may be stated, however, that it is not claimed that any decree has been made which prevents a dismissal, but only that by the pleadings and the record it appears that certain defences have been made and peculiar circumstances exist which make it inequitable to allow a dismissal without a hearing on the merits, so that their rights may be declared and protected by proper decrees, both against the plaintiffs and as between the defendants themselves.

The general proposition is laid down in the books that the plaintiff may move to dismiss his own bill, with costs, as a matter of course, at any time before decree. The ordinary form of the decree is that, "upon motion of the plaintiff he has leave to dismiss his bill upon payment of the costs," or that "upon payment of costs to be taxed the bill stand dismissed." 2 Hoff. Ch. Pr. Appdx. form No. 117; 1 Id. 328, note. It seems to be a conditional order, and depends upon actual payment of costs to give it effect, unless the defendant chooses to treat the bill as dismissed, and takes steps to enforce it as a judgment for the costs. But what effect will be given to a decree dismissing a bill on plaintiff's motion, when such decree is set up in bar of a subsequent suit for the same cause of action between the same parties, is not well settled. *Babb* v. *Mackey*, 10 Wis. 314, 371. It is because of this doubt, perhaps, that the plaintiffs here ask the extraordinary order that this voluntary dismissal shall be "without prejudice" to the bringing of another suit at law or equity concerning any of the matters involved herein. The only reason assigned for this form of decree is that, such being the effect of a voluntary dismissal,

it is therefore proper to allow a decree authorizing another suit to be brought.

The learned counsel for plaintiffs produces much authority to establish his right to bring another suit if this be voluntarily dismissed, and asks the court now to determine that question by inserting a judgment on it in his favor in the decree of dismissal. The proper occasion to adjudicate that question will be when the second suit shall be brought, and the decree on the first shall be pleaded in bar to its further prosecution. It is manifestly improper to rule upon it now. If the plaintiffs' assumption of the law be correct, they do not need to add to the decree that it shall be without prejudice to their right to bring another suit; and, unless there be some special circumstance requiring the court to depart from the usual form of decree in such cases, it would not be just to the defendants to prejudge their right to plead a voluntary dismissal in bar of another suit. In *Vaneman* v. *Fairbrother*, 7 Blackf. (Ind.) 541, the court refused the plaintiff's motion to dismiss "without prejudice," and inserted in the decree that it was dismissed "*with prejudice.*" The plaintiff appealed because the order was not granted in the form he asked. The supreme court very sensibly said: "Had the order of dismission contained the words 'without prejudice,' as desired by complainant, it would have afforded no more security to his rights than it would without them; and the insertion of the words 'with prejudice,' as insisted on by the court, does not render the order of dismission peremptory, like a decree of dismission on the merits. Either set of words is unmeaning in an order of dismissal, on the motion of complainant, without a final hearing, as it would have been had the cause been dismissed, on motion of the defendants, for want of prosecution."

After a hearing, either upon demurrer or final hearing, it may be and often is very important to determine whether a dismissal shall be without prejudice; and where the plaintiff has made some slip and finds himself caught in the predicament of having his cause heard imperfectly by reason of some defect of pleading or parties, or misconception of the

form of the proceeding or want of jurisdiction, he may be entitled to such a decree. *Hughes* v. *U. S.* 4 Wall. 232; *Kendig* v. *Dean*, 97 U. S. 423; *Clay* v. *Rufford*, 19 Eng. L. & Eq. 350. We need not go into an examination of this class of cases, and it is sufficient to state that generally, where the plaintiff is without fault and justice would require it, he will be allowed to amend or bring a new suit. It may be that in that class of cases where, if a hearing were had, the court would feel authorized to exercise its discretion and order a dismissal without prejudice, the plaintiff might, on discovering the defect, voluntarily dismiss; and, to save all possible question of his right to bring another suit, the court would possibly allow him to dismiss without prejudice. *Lester* v. *Leather*, 1 De G. & J. 360–361. In the case now under consideration no suggestion is made of any circumstance like those mentioned to invoke the discretion of the court in favor of such a decree. Motion denied.

---

September 20, 1880. The foregoing decision having been announced, the plaintiffs moved to dismiss, in the common form, upon the payment of costs. The defendants insist that this cannot now be done without prejudicing their rights in a way that will make it inequitable to grant this motion. These are bills filed by certain holders of bonds of the state of Tennessee to enforce against the railroads named as defendants a lien which the bills claim exists in their favor on the railroad property now in the hands of the present owners of the roads. Other defendants are persons called in the argument "substitution" bond holders, who own bonds of the railroad companies issued since the bonds of the state that the plaintiffs hold. It appears by the records, and by affidavits filed on the hearing of this motion, that these suits are three of some twenty suits in all filed in this district, and the other federal judicial districts of Tennessee, against all the railroads in the state affected by the alleged lien. The cases have all been prepared for trial in a very elaborate manner, and, being set for hearing, have been all tried, by agreement, except these

three before the court at Nashville, and are now awaiting judgment. Counsel disagreed as to these three, and they were called for trial regularly at the beginning of this term, and passed, for the mutual accommodation of counsel, to enable them to reach some basis of agreement for their trial.

The defendants continuing to urge a hearing, the cases were, by stipulation between the counsel in writing, set for trial on the sixth of September, unless the plaintiffs should show cause for continuance. On that day they moved to dismiss without prejudice, which motion being denied, they now move to dismiss generally. No reason is given for taking this course growing out of any defect in the proceedings or want of preparation for trial, but the motion is urged simply upon the ground of an absolute right to dismiss at pleasure, at any time before the cases are actually heard. The defendants, among other defences, plead an equitable estoppel arising out of the conduct of the plaintiffs. The allegations on this subject briefly are, that the railroad companies, by authority of law, had satisfied the lien now sought to be enforced by the plaintiffs in a settlement they had made with the state before these bills were filed; that in the process of this settlement, and relying on its validity as a release of the lien, they have issued bonds in large amounts, secured by liens on the roads. These are called "substitution" bonds. Both the companies and these "substitution" bond holders allege that the plaintiffs had acquiesced and so conducted themselves in the matter of the settlement with the state, and the issuance of the "substitution" bonds, that they have precluded themselves from claiming any lien for the bonds they hold, however much other persons may be entitled to such a lien.

Letters of the plaintiffs are exhibited, with the answers and proof taken, intended to establish this estoppel on the one hand and to defeat it on the other. The defendants now say, if the plaintiffs voluntarily dismiss these bills they can transfer their bonds to other persons, not affected by this alleged conduct of the plaintiffs, and this defence may be thereby effectually defeated To this several replies are made: *First,* that the right to dismiss is absolute and un-

qualified; *second*, that the proof does not sustain any estoppel; *third*, that the defendants can, by bill of injunction, protect themselves against any transfer; *fourth*, that the law of *lis pendens* does not apply to negotiable paper, and that a transferee, while this suit is pending, would not be affected by these allegations of estoppel.

On a motion to dismiss I cannot try the merits of this defence, nor determine whether it has been made out by the proof. *Sutton Harbor Co.* v. *Hitchens*, 15 Eng. L. & Eq. 127. It is sufficient on the present motion that the defence has been pleaded. The point made by defendants is that they are now entitled to a hearing on the question of estoppel, and that, relying on the issue of these suits to determine it, they cannot be defeated of their defence by a voluntary dismissal. It is apparent that if the bonds held by the plaintiffs can be transferred so that the assignee would be unaffected by the pendency of these suits, no injury can result to the defendants by the proposed dismissal. And it is therefore necessary to settle that point.

The rule is established that negotiable paper may be transferred pending a litigation concerning its validity, or in which defences are made to it, and the *bona fide* assignee is not chargeable by the pendency of the suit with the knowledge of the defence. *County of Cass* v. *Gillett*, 100 U. S. 585, 593; *County of Warren* v. *Marcy*, 97 U. S. 96; *Orleans* v. *Platt*, 99 U. S. 676. But this doctrine has no application here. This is not a suit upon the bonds. The obligor, the state of Tennessee, is not a party to the suit, and, even if it were, there is no question about the bonds themselves. Indeed, it is not a suit on the commercial paper. It is an equitable cause of action against third parties. It is a bill to enforce a lien claimed upon property in the hands of the defendants, who are not charged on the bonds in any other sense than that there is a lien upon their property. Some of the defendants setting up the estoppel are alleged to be subsequent lien holders, and as to them the controversy is between the plaintiffs claiming one lien and those defendants another. I do not see how this kind of case can be said to come within the doctrine men-

tioned.    It is true the paper said to be secured by this lien is negotiable, and the holder, whoever he be, would be entitled to the benefits of the lien; but the causes of action on the bonds protected by this principle against the consequences of *lis pendens* are independent of and entirely collateral to those causes of action arising out of the lien.    If one held a negotiable note, secured by a mortgage given by some third party not bound on the note, it cannot be that all the legal and equitable suits between the payee of the note and the mortgagor would come to naught by a transfer of the note, simply because the note was negotiable, when it is only in a court of equity, and by operation of equitable principles, that a transfer of the note would transfer the lien.    The mortgage itself is not negotiable in that sense.

The cases cited neither in principle nor precedent apply to a case like this, and I know of no reason why an assignee of these bonds would not be chargeable with notice, by the pendency of these suits, of the defences set up by defendant, against the claim of a lien on their property.    The answer given by Mr. Justice Miller in *Durant* v. *Iowa County*, 1 Wool. 69, and approved in *Warren County* v. *Marcy, supra,* to objections to the doctrine making negotiable paper an exception to the rule of *lis pendens,* renders this view more certain.    He says the party can protect himself against a transfer by injunction, or a decree that the securities be given up to be cancelled.    Now no injunction would be granted restraining these plaintiffs from transferring these bonds of the state of Tennessee to whomsoever they pleased, or requiring them to surrender them to be cancelled.    The suit does not involve the bonds, and these defendants have no concern with them, or interest in having them enjoined or cancelled.    Their only concern is to protect themselves against the claim of a lien on their property, and this they can effectually do only by an adjudication that no such lien exists, and a decree restraining the plaintiffs from setting it up against them.    No cross-bill is necessary to entitle a defendant to such a decree.    It is the customary decree where a plaintiff sets up in a court of equity a false claim to property, or to an interest in it or lien upon it,

to restrain him from again setting it up.   It is done to remove
the cloud and keep the title clear.   2 Dan'l, Ch. P. (5th Ed.)
1614, and cases cited, notes 4, 5, and 6.

I have no doubt whatever that these suits do operate as a
*lis pendens,* and are no exception to the general rule on that
subject.   It is argued that every suit operates as a *lis pen-
dens,*—that is, as notice of whatever there is in it,—and, if this
fact is to qualify the right to dismiss, no suit could be dis-
missed by the plaintiff, as he might after dismissal transfer
the subject-matter and avoid its effect as notice to the world
of the defences pleaded.   This would be quite conclusive if
it were the *lis pendens* only that is relied upon by defendants;
but it is not.   The supposed qualification of the right of dis-
missal depends upon the nature and characteristics of the
*estoppel* that is pleaded.   That, it is claimed, operates as a
waiver by the plaintiffs of any lien, and releases the property,
so far as concerns the particular bonds held by them.   It
is not a merely personal bar on the plaintiffs, but is binding
as well on their privies,—certainly those purchasing from them
with notice,—and acts as a defeasance of the alleged lien.   It
is analogous to one purchasing land of another, while the
real owner stands silently by, or encourages the purchase.
If his conduct does not operate to pass title, it amounts to
the same thing, that he and his privies are estopped.   Bigelow
on Estoppel, 449.

The pleading of that estoppel and its judicial ascertainment
are very important to the security of such a title.   If these
defendants were pleading it by a bill of their own, they would
be in no danger of having it circumvented by a transfer of the
bonds, and they claim here that they are now entitled to a
decree which will give them the same relief as if they had
filed a bill; and it seems to me that if they establish the
estoppel they would be entitled to such a decree.   It is true
that the defendants may file a bill of their own, and it is very
earnestly argued that this is their only remedy against the
supposed danger of a transfer; and it is suggested by the
learned counsel that the defendants might bring such a bill in
this court, under the provisions of section 8 of the act of

March 3, 1875. 18 U. S. St. 472. I doubt if a bill requiring a personal injunction, and where the injunction is the chief relief sought, could be brought here under that section, and if not the defendants would have to go to the states where the plaintiffs reside. Their argument is that there is no justice in compelling them to this course when the plaintiffs have already brought a suit, and everthing is ready for the hearing on the very issues to be made by these proposed injunction suits, and I am of opinion that it is well taken, unless the plaintiffs have an unqualified right of dismissal.

In *Booth* v. *Leycester,* 1 Keen, 247, 255; S. C. 15 Eng. Ch. R. 247, Lord Langdale, master of the rolls, said that "he had a strong impression at first that a plaintiff might dismiss his own cause upon payment of costs at any time; but, upon inquiring into the practice, he found the rule to be otherwise, and it was certainly quite reasonable that a plaintiff ought not to have the power of dismissing his bill, when by so doing he might prejudice the defendant." Elsewhere it is said, in the report of the case, that it was "the opinion of the most experienced officers of the court that the order was irregular." The cause had stood over to enable his lordship to examine the cases as to the practice, and he stated it as above quoted. There were two suits, *Booth* v. *Leycester* and *Palmer* v. *Leycester,* the latter being the one sought to be dismissed. The report is somewhat misleading in calling the second a "*cross-bill,*" because it was not a cross-bill in the first suit, but an independent bill, more properly called in other parts of the report a "*cross cause.*" The two causes had been prepared for hearing, and set down together, when the defendant in the first cause, who was plaintiff in the second, obtained an order, as of course, to dismiss his own bill, and then objected that there was a want of parties in the first. This order of dismissal was set aside as irregular. The ground taken for the dismissal was that Palmer, the plaintiff, had misconstrued a will, under which he claimed in the bill that he was tenant in fee, when he was only a tenant for life. If he was tenant for life, the first suit was defective for want of parties, and this was the advantage he sought by dismissing

his bill, and which the learned master of the rolls would not permit him to take.

I am thus particular in analyzing this cause, because I think the learned counsel for the plaintiff here, and some of the digests are mistaken when they say that it only decides that a defendant will not be allowed to dismiss his cross-bill to the injury of the plaintiff in the original suit. The case was afterwards affirmed "in all its parts" by Lord Chancellor Cottenham, 3 Mylne & Craig, 459, 471; S. C. 14 Eng. Ch. R. 459. This question of practice was not mentioned or referred to on appeal, so far as the report shows, but if the ruling of the master of the rolls had not been correct there was probably such a defect of parties as would have been fatal to the plaintiff's case, and it is fair to infer that if the lord chancellor had not approved the ruling the question would have been noticed. At all events, the decision of the master of the rolls was submitted to, when, if wrong, it might have been reversed. However, the case of *Curtis* v. *Lloyd*, 4 Mylne & Craig, 194; S. C. 18 Eng. Ch. 193, is relied on as overruling *Booth* v. *Leycester*, *supra*. The latter case was cited before the same lord chancellor who had affirmed it, and it is said he did not follow it or notice it. It was well said in that case, by the solicitor in favor of the motion to dismiss, that *Booth* v. *Leycester* was a case of "very peculiar circumstances," and had no application to *Curtis* v. *Lloyd*. No suggestion was made in this latter case of any injury to the defendant, except that another suit could be brought, and the point made was that it was too late after a cause was set for hearing to dismiss it voluntarily. This point was the only one ruled in the case.

It is conceded by the defendants here that under the practice as settled by that case there is no objection to this motion in respect to the time at which it is made; but they contend that at no time after they have pleaded an estoppel, like that relied on by them, can the plaintiff endanger that defence by a voluntary dismissal, and that this case falls within the exceptions to the general rule. The same thing may be said of *Carrington* v. *Holly*, 1 Dick. 280. The

only question there was as to the time at which the motion could be made, and there were no special circumstances of injury relied on as an objection to the motion.

In *Badger* v. *Badger*, 1 Cliff. 237, the second suit had been brought, and the question was whether the first, which had been dismissed, was a bar. The replication to the plea denied that publication had passed, and averred that the bill had been voluntarily dismissed, *no objection being made thereto;* and it may be added that nothing in the case showed any especial injury to the defendant, or other prejudice than the ordinary inconvenience of being vexed with two suits, as to which the payment of costs seems to be regarded as compensation. The learned circuit justice recognizes that the rule allowing a dismissal is not absolute, when he says that the plaintiff might dismiss his bill at any time before a hearing on the merits, upon payment of costs, "unless, perhaps, there had been some order or *proceeding* in the cause conferring rights upon the respondent which would be defeated or impaired by allowing that order." He had no occasion to examine these exceptions to the general rule, and expresses no opinion on the subject.

The case of *Booth* v. *Leycester* is conclusive against the position that the right protected by this exception must arise out of some order or decree entered in the case. It may arise out of any proceeding in it, and may be found in the nature of the defence, the condition of the pleadings, the agreement of the parties, or any circumstances appearing of record in the case which show that it would be inequitable to allow the dismissal. In regard to the attack made on the authority of *Booth* v. *Leycester*, both by counsel in *Curtis* v. *Lloyd* and here, it may be said that when so eminent an equity judge as Lord Langdale says he has examined the practice and corrects an impression before that entertained by himself, as it is now entertained by learned counsel in this case, I must take it to be as he rules, unless he has been put in error by the authorities produced. Matters of practice cannot be decided wholly upon adjudicated cases, and the master of the rolls in 1838 is a far better exponent of what

the practice was at that time than any American judge at this distance from the time fixed for our guidance by the equity rules. Equity Rule 90.

The same lord chancellor, whose ruling in *Curtis* v. *Lloyd* is so much relied on, said, in *Cooper* v. *Lewis*, 2 Phil. 177, 181; S. C. 22 Eng. Ch. 181, that "the plaintiff is allowed to dismiss his bill on the assumption that it leaves the defendant in the same position in which he would have stood if the suit had not been instituted; but that is not so where there has been a proceeding in the cause which has given the defendant a right against the plaintiff." In that case it was an order on a demurrer, from which the defendant could appeal. Here it is the plea of an estoppel, on which the defendants may have a decree against the plaintiffs personally, in the sense that they need to act upon them by injunction at the hearing; and if now they are allowed to leave the court they may not only rid themselves of the defence by transfer of the bonds, but drive the defendants to other states for redress. By general order No. 117 of 1845, 29 Eng. Ch. R. Prefix 66, the practice was regulated definitely by a rule which is consonant with every sense of justice, and the plaintiff is not allowed to dismiss, or make default, after the cause is set down for hearing, without its being equivalent to a dismissal on the merits. This rule is not binding on us, but it has been adopted in many states, either by rule or statute. *Badger* v. *Badger, supra*; *Howard* v. *Bugbee*, 25 Ala. 548; *Kean* v. *Lathrop*, 58 Ga. 355.

The existence of this rule, so soon after *Booth* v. *Leycesier* and *Curtis* v. *Lloyd*, accounts for the fact that there are no later cases on the subject cited by the text writers. I have consulted all the works of practice, old and new, and all the cases I could find accessible to me, and the general result is that while they say with one accord that it is a matter of course to allow the plaintiff to dismiss at any time before the hearing upon payment of the costs, none of them deny the qualification to the rule; and the cases generally cited anterior to those already mentioned, namely, *Anonymous*, 1 Ves. Jr. 140; *Dixon* v. *Parks*, Id. 401, 402; *Countess of Plymouth* v.

*Bladen,* 2 Vern. 31, 32; and *Gilbert* v. *Hawles,* 1 Ch. Ca. 40, do not any of them fall within the exceptions mentioned by Lord Langdale. In 1 Harrison, Ch. Pr. (Farrand's Ed. A. D. 1807,) 409, the rule is stated thus: "Before appearance, the plaintiff may obtain leave to dismiss his own bill, so after appearance and before answer, or after answer and before the parties have examined witnesses, the plaintiff may generally of course, on motion, have leave to dismiss his own bill, with costs."

The case of *Bossard* v. *Lester,* 2 McCord Ch. 419, cited by plaintiffs, was overruled in *Bethia* v. *McKay,* Cheves' Eq. 93; and, in *Bank* v. *Rose,* 1 Rich. Eq. 292, one of the ablest of our equity courts, by the mouth of a most eminent chancellor, after an elaborate examination of the subject, takes the same view Lord Langdale did, and reaches the same conclusion I have here expressed. It is said in *Butler* v. *Bulkeley,* 2 Swanst. 396, (373) that "there is no rule of practice in this court which does not yield to special circumstances." Numerous other cases have been cited from the state reports, but I deem it unnecessary to further notice them. None of them deny the qualification, or limit it to rights acquired under a decree.

Other objections are taken, such as that the defendants having answered under oath are entitled to the benefit of the answer as evidence; that by a dismissal the plaintiffs can defeat this right and in a new bill waive the oath, under the amendment of the forty-first rule promulgated December, 1871; that there are rights to be adjudicated as between the defendants themselves; and that these plaintiffs shall not be allowed, by what the defendants' counsel call "arbitrary and whimsical conduct," to deny them a voice in the determination of this important litigation by dismissing the bills against these defendants while prosecuting all the others in the series against the other railroads.

I am inclined to think that none of these objections are tenable to qualify the right to dismiss in the present state of the practice, but it is not necessary to decide these points in the view I take of the first objection considered. The injury

to the defendant must be of a character that deprives him of some substantive rights concerning his defences not available in a second suit, or that may be endangered by the dismissal, and not the mere ordinary inconveniences of double litigation, which, in the eye of the law, would be compensated by costs. Nor is it necessary to consider the suggestion that the stipulation of counsel, and the order upon it, amounts to an agreement to try or continue and not dismiss. I am satisfied that the right to dismiss is not absolute, and that this case is within the qualification mentioned.

Motion denied.

NOTE.—Consult, on the right of the plaintiff to dismiss, Ordinances of Lord Bacon, Nos. 13, 14, 16, 17; Barton's Suit in Equity, (Appendix;) Madd. Ch. Pr. 297; 1 Newl. Ch. 177; 1 Smith's Ch. Pr. (2d Ed.) 312, (Ed. 1842;) Beame's Eq. Costs, 85, 229, (20 Law Lib.;) 1 Danl. Ch. Pr. (5th Ed.) 790, and compare previous editions; 1 Hoff. Ch. Pr. 327, and notes; *Handford* v. *Storie*, 2 Sim. & Stu. 196; S. C. 1 Eng. Ch. 196; *Brandlyn* v. *Ord*, 1 Atk. 571; *Ruberry* v. *Morris*, 16 Sim. 313; S. C. 39 Eng. Ch. 313; *White* v. *Westmeath*, 2 Moll. 128; S. C. 1 Beat. 17; S. C. 12 Cond. Eng. Ch. 478; Gen. Ord. No. 117, 29 Eng. Ch. (Prefix 66;) 2 *De G. Macn & Gord.* 852, note; *Re Orrell Co.* L. R. 12 Ch. Div. 681; *Bierdemann* v. *Seymour*, 1 Beav. 594; S. C. 17 Eng. Ch. 594, note; 29 Eng. Ch. 350; *Craft* v. *Johnson*, Tenn. Sup. Ct. Knoxville, 1875; *Ellis* v. *Smith*, Id.; 1 King's Dig. (2d Ed.) 945, 2; *Foote* v. *Gibbs*, 1 Gray, 412; *Bigelow* v. *Winsor* Id. 299, 301; *Borrowscale* v. *Tuttle*, 5 Allen 377; *Snell* v. *Dwight*, 121 Mass. 348; *Perrine* v. *Swaim*, 2 J. C. 475; *Burras* v. *Looker*, 4 Paige, 227; *Cummins* v. *Bennet*, 8 Paige, 79; *Simpson* v. *Brewster*, 9 Paige, 245; *Sea Ins. Co.* v. *Day*, Id. 247; *Saxton* v. *Stowell*, 11 Paige, 526; *Railroad Co.* v. *Ward*, 18 Barb. 595; *Wilder* v. *Boynton*, 63 Barb. 547, 550; *Ogsbury* v. *La Farge*, 2 N. Y. 113; *Smith* v. *Adams*, 24 Wend. 585; *Conner* v. *Drake*, 1 Ohio St. 166; *French* v. *French*, 8 Ohio, 214; *Louderbach* v. *Collins*, 4 Ohio St. 251; *Smith* v. *Smith*, 2 Blackf. (2d Ed.) 232; *Spriggs* v. *Wilson*, 2 Dev. Eq. 385; *Sayles* v. *Tibbetts*, 5 R. I. 79, 91; *Porter* v. *Vaughn*, 26 Vt. 624, 626; *Grubbs* v. *Clayton*, 2 Hayw. 575; *Palmer* v. *Rankins*, 30 Ark. 771; *Cook* v. *Walker*, 24 Ga. 331; *Camden, etc.,* v. *Stewart*, 4 Green, Ch. 69; *U. S.* v. *Keen*, 1 McLean, 429, at p. 447; *Welch* v. *Mandeville*, 1 Wheat. 233; *Goodyear* v. *Bishop*, 4 Blatchf. 438.