## TOWN OF VENICE *v.* MURDOCK.

1. An act of the legislature of New York authorized the supervisor of any town in the county of Cayuga, and the assessors of such town, who were thereby appointed to act with the supervisor as commissioners, to borrow money to the amount of twenty-five thousand dollars to aid in the construction of a railroad passing through the town, and execute the bonds of the town therefor. The act, however, provided that the supervisor and commissioners should have no power to issue the bonds until the written assent of two-thirds of the resident tax-payers, as appearing on the assessment-roll of such town next previous to the time when such money may be borrowed, should have been obtained by such supervisor and commissioners, or some one or more of them, and filed in the clerk's office of said county, together with the affidavit of such supervisor or commissioners, or any two of them, attached to such statement, to the effect that the persons whose written assents are thereto attached and filed comprise two-thirds of all the resident tax-payers of said town on the assessment-roll of such town next previous thereto. Subsequently a written assent to the effect required was filed in that office, the persons who signed it representing themselves to be such resident tax-payers. Upon this instrument was indorsed the affidavit of the supervisor and one of the commissioners, that the persons whose names were subscribed to the assent composed two-thirds of all the resident tax-payers of said town. The bonds were issued, signed by the supervisor and commissioners, reciting that, in pursuance of said act of the legislature, " and the written assent of two-thirds of the resident tax-payers of said town obtained and filed in the office of the clerk of the county of Cayuga," said town promised to pay the sum of money therein named to bearer. *Held,* 1. That it was the appointed province of the supervisor and commissioners to decide the question, whether the condition precedent to the exercise of their authority had been fulfilled; that they did decide it by issuing the bonds; and that the recital in the bonds was a declaration of their decision. 2. That the supervisor and commissioners, who procured what purported to be the written assent of the tax-payers, had means of knowledge touching the genuineness of the signatures to the paper, which, from the nature of the case, the purchaser could not have ; and that, in a suit by a *bona fide* holder of the bonds, the town was estopped from disputing their validity, and that he was not bound to prove the genuineness of the signatures to the written assent.
2. The decisions of the Court of Appeals of the State of New York on cases arising upon the same statute, and a similar state of facts, are not conclusive on this court, as such decisions do not present a case of statutory construction.

Error to the Circuit Court of the United States for the Northern District of New York.

This suit was brought upon certain bonds, each of which is as follows: —

"State of New York, *County of Cayuga:* —

"Seven per cent loan, not exceeding $25,000.

"Be it known that the town of Venice, in the county of Cayuga, and State of New York, in pursuance of an act of the legislature of the said State, entitled 'An Act to authorize any town in the county of Cayuga to borrow money for aiding in the construction of a railroad or railroads from Lake Ontario to the New York and Erie or Cayuga and Susquehanna Railroad,' passed April 16, 1852, and for the purpose of aiding the construction of the Lake Ontario, Auburn, and New York Railroad, owes, and promises to pay, to —— ——, or bearer, $1,000, with interest at the rate of seven per cent, payable semi-annually, on the first days of January and July in each year, on surrender of the coupons hereto attached, at the Bank of the State of New York, in the city of New York; the principal to be reimbursable at the same place at the expiration of twenty years from the first day of January, 1853.

"In testimony whereof, the supervisor and commissioners of the town of Venice have, pursuant to the provisions of the act aforesaid, and the written assent of two-thirds of the resident tax-payers of said town, obtained and filed in the office of the clerk of the county of Cayuga, hereunto subscribed their names, this second day of March, a. d. 1853.

"Calvin King, *Supervisor.*

Jonas Wood, ⎱
Isaac Smith, ⎰ *Commissioners.*"

The following certificate was indorsed thereon: —

"Cayuga County Clerk's Office.

"I, Edwin B. Marvine, clerk of the county of Cayuga, hereby certify that a paper purporting to be the written assent of two-thirds of the resident tax-payers of the town of Venice, with the affidavit required by sect. 1 of the act referred to by its title in the foregoing bond, has been filed in this office.

"Dated Auburn, May 16, 1853.

"(Signed)            "E. B. Marvine,
                                   *"Clerk of Cayuga County."*

*Mr. Warren T. Worden* for the plaintiff in error.
*Mr. David Wright, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

It would be worse than useless for us to discuss separately each of the twenty-two assignments of error filed in this case; for the questions involved that are of any importance are very few in number. The leading one is, whether sufficient authority was shown at the trial for the issue of the town-bonds. The act of the legislature empowered the supervisor and the railroad commissioners of the town to borrow money, and to execute bonds therefor to an amount not exceeding $25,000. It directed that all moneys borrowed under its authority should be paid over to the president and directors of such railroad company (then organized, or that might thereafter be organized, under the provisions of the general railroad law), as might be expressed by the written assent of two-thirds of the resident tax-payers of the town, to be expended by said president and directors in grading, constructing, and maintaining a railroad or railroads passing through the city of Auburn, and connecting Lake Ontario with the Susquehanna and Cayuga Railroad, or the New York and Erie Railroad.

The act provided, however, that said supervisor and commissioners should have no power to do any of the acts authorized by the statute until a railroad company had been duly organized according to the requirements of the general railroad law, for the purpose of constructing a railroad between the termini above mentioned and through the town, and until the written assent of two-thirds of the resident persons taxed in said town, as appearing on the assessment-roll of such town made next previous to the time such money might be borrowed, should have been obtained by such supervisor and commissioners, or some one or more of them, and filed in the clerk's office of Cayuga County, together with the affidavit of such supervisor or commissioners, or any two of them, attached to such statement, to the effect that the persons whose written assents are thereto attached and filed as aforesaid comprised two-thirds of all the resident tax-payers of said town on its assessment-roll next previous thereto.

This act was passed on the sixteenth day of April, 1852; and, on the 23d of August next following, a railroad company was organized to construct a railroad through the town between the

termini mentioned in the act.. On the 3d of November, 1852, there was filed in the office of the county-clerk of Cayuga County a written assent that the supervisor and assessors of the town (the assessors being railroad commissioners) might borrow such sum of money as they might deem necessary, not exceeding $25,000, giving town-bonds therefor; and that the money might be paid to the railroad company organized to construct the railroad. Two hundred and fifty-nine names were signed to the assent, the persons signing representing themselves to be resident tax-payers of the town of Venice. Upon this instrument was indorsed the affidavit of the supervisor and one of the commissioners that the persons whose names were subscribed to the assent comprised two-thirds of all the resident tax-payers of the said town of Venice on its assessment-roll next previous to the date of the affidavits, — namely, next previous to Oct. 30, 1852; and, on the 2d of March next following, the supervisor and the commissioners executed the bonds now in suit. Evidence of these facts was given at the trial; but the defendant objected to the admission in evidence of this assent, and of the bonds, on the ground that the plaintiff must first prove that the signatures to the assents were the genuine signatures of those persons whose names purported to be signed. The Circuit Court overruled this objection; and whether rightfully or not, is the primary and almost the only material question in the case.

It is very obvious that if the act of the legislature which authorized an issue of bonds in aid of the construction of the railroad, on the written assent of two-thirds of the resident tax-payers of the town, intended that the holder of the bonds should be under obligation to prove by parol evidence that each of the two hundred and fifty-nine names signed to the written assent was a genuine signature of the person who bore the name, the proffered aid to the railroad company was a delusion. No sane person would have bought a bond with such an obligation resting upon him whenever he called for payment of principal or interest. If such was the duty of the holder, it was always his duty. It could not be performed once for all. The bonds retained in the hands of the company would have been no help in the construction of the road. It was only

because they could be sold that they were valuable. Only thus could they be applied to the construction. Yet it is not to be doubted that the legislature had in view, and intended to give, substantial aid to the railroad company, if a sufficient number of the tax-payers assented. They must have contemplated that the bonds would be offered for sale ; and it is not to be believed that they intended to impose such a clog upon their salableness as would rest upon it if every person proposing to purchase was required to inquire of each one whose name appeared to the assent whether he had in fact signed it.

The act of the legislature manifests a contrary intent. It created a tribunal to determine whether two-thirds of the resident tax-payers had assented. That tribunal was the supervisor and the commissioners, empowered also to execute the bonds in case such an assent were given. They were the appointed agents to obtain the assent ; and, when acquired, they, or any two of them, were to make an affidavit that the persons whose written assents were attached to the statement comprised two-thirds of the resident tax-payers. That statement, with the affidavits, was required to be filed in the county-clerk's office. All this indicates unmistakably that it was their appointed province to decide whether the condition precedent to the exercise of their authority to issue the bonds had been complied with. *Commissioners* v. *Nichols*, 14 Ohio, N. S. 260. They did decide the question before they issued the bonds. Their statement, verified by their affidavit, filed in the county-clerk's office, was a decision, and the recital in the bonds was a declaration of the decision. That such a decision concludes the town against denying that the condition precedent had been performed, that it relieves the holder of the bonds from the obligation to look beyond it, is too firmly settled in this court to admit of question. In Dillon on Municipal Corporations, sect. 418, the author, after reviewing the decisions, states this conclusion: " If, upon a true construction of the legislative enactment conferring the authority, the corporation, or certain officers, or a given body or tribunal, are invested with power to decide whether the condition precedent has been complied with, then it may well be that their recital of their determination of a matter *in pais*, which they are

authorized to decide, will, in favor of the bondholder for value, bind the corporation." Here there was more than a recital. There was, in addition, proof of an actual decision, verified by oath. Without citing the numerous decisions which sustain this statement of the law, we refer only to *St. Joseph Township* v. *Rogers*, 16 Wall. 644, and *Town of Coloma* v. *Eaves*, *supra*, p. 484, decided at this term, which unequivocally assert it. And the rule has additional reason in its favor, where, as in the present case, the authority of the municipal officers to bind the municipality is made dependent upon a precedent condition of fact; and the fact is not of a nature to be ascertained by purchasers in the market, to whom it was contemplated the bonds might be sold. Dillon, in sect. 419, states this as another exception to the rule that an unauthorized representation by a municipal officer that he has power is not binding on the corporation. His language is, " The only exception to this rule (the rule above stated), — to wit, where it is the sole province of the officers who issued the bonds to decide whether conditions precedent have been complied with, — is where both parties have not equal means of knowledge as to the extent and scope of their powers, and where the particular character of their commission and authority is, from its nature and circumstances, peculiarly known to the officer or agent; in which case the principal will, or may be, bound by the false representations of the agent respecting its authority and its extent and scope." The present is exactly such a case. The town-officers had means of knowledge which the purchaser had not. They procured the signatures to the assent, and they knew whether or not they were genuine. They had knowledge, which, from the nature of the case, the purchaser could not have.

We are aware that in the State of New York it has been held adversely to the opinions we have expressed. It was so held in *Starin* v. *The Town of Genoa*, and in *Gould* v. *The Town of Sterling*, 23 N. Y. 439, 456. In the former case the court ruled, that under the act of April 16, 1852 (the same act which conferred powers conditionally upon the supervisors and commissioners of the town of Venice), the *onus* was on the bondholder to show, in a suit against the town, that two-thirds of

the resident taxables had given their written assent to the creation of the bonds. In the latter case a similar decision was given when bonds had been issued under another act, much like the act of 1852, though differing in some material particulars. These decisions are in conflict with the rulings of this court in *Bissell* v. *Jeffersonville*, 24 How. 287; *Knox County* v. *Aspinwall*, 21 id. 539; *Mercer County* v. *Hackett*, 1 Wall. 83, and other cases which we have cited. They are in conflict also with decisions in other State courts. *Society for Savings* v. *New London*, 29 Conn. 174; *Railroad Company* v. *Evansville*, 15 Ind. 395; *Comm'rs* v. *Nichols*, 14 Ohio, N. S. 260. We have carefully considered the reasons given for the judgments in the New-York cases, without being convinced by them. They ignore the paramount purpose for which the bonds were authorized by the legislature, and they treat the written assent of the taxables as the authority to the township-officers, when, in fact, the power was given by the legislature, and it was only left to the town to determine by the action of two-thirds of the resident taxables whether the supervisors and commissioners might act under the power. In *Gould* v. *Sterling*, the legislative act required no affidavit to be filed with a statement of the assenting tax-payers; and, in *Starin* v. *Genoa*, the affidavit filed was regarded as merely verifying that the persons whose names appeared on the assents comprised two-thirds of all the resident tax-payers. But it is obvious, that, if no more than this was meant by the required affidavit, it was wholly useless; for the assessment-rolls of the township would have shown as much.

The authority of *Starin* v. *Genoa* has not been increased by the subsequent action of the New-York courts. In *The People* v. *Mead*, 24 N. Y. 114, the ruling was followed; but Judge Denio, who only gave an opinion, claimed that the decision in *Starin* v. *Genoa* had been made on the ground that the bonds were not issued upon a loan, and that the plaintiff was not a *bona fide* holder. *The People* v. *Mead* came again before the Court of Appeals in 36 N. Y., p. 224, when Davis, J., said, "We do not think it seemly to review and reverse the former judgment of this court in this action upon the same facts;" and Grover, J., said, "But for the previous adjudication of

this court, I should have held that the affidavit filed with the clerk of Cayuga County, pursuant to the second section of chap. 375 of the laws of 1852, was conclusive evidence of the assents of the tax-payers of the town, required by the act in favor of a *bona fide* holder of the bonds issued under its provisions." But assuming that what was ruled in *Gould* v. *Sterling*, and in *Starin* v. *Genoa*, is still the doctrine of the New-York courts, we find ourselves unable to yield to it our assent. It is against the whole current of our decisions, as well as against the decisions made in other States; and we think it is not supported by the soundest reasons.

It is argued, however, that the New-York decisions are judicial constructions of a statute of that State; and, therefore, that they furnish a rule by which we must be guided. The argument would have force if the decisions, in fact, presented a clear case of statutory construction; but they do not. They are not attempts at interpretation. They would apply as well to the execution of powers or authorities granted by private persons as they do to the issue of bonds under the statute of April 16, 1852. They assert general principles, — to wit, that persons empowered to borrow money and give bonds therefor, for the purpose of paying it to an improvement company, are not authorized to deliver the bonds directly to the company; a doctrine denied in this court, in the Supreme Court of Pennsylvania, and even in the Court of Appeals of New York. *People* v. *Mead*, 24 N. Y. 124; *The Town of Venice* v. *Woodruff et al.*, 62 id. 462. They assert, also, that, where an authority is given to an officer to execute and issue bonds (on the assent of two-thirds of the voters of a town, the assent to be obtained by the officer and filed in a public office, with an affidavit verifying the assent), the verification amounts to nothing, subserves no purpose, and that a *bona fide* holder of the bonds is bound to prove that the requisite number of voters did actually assent. They assert this as a general proposition. They do not assert that the statute so declares, or that such is even its implied requisition. There is, therefore, before us, no such case of the construction of a State statute by State courts as requires us to yield our own convictions of the right, and blindly follow the lead of others, eminent as we freely concede they are.

We have treated the case thus far on the assumption that the plaintiff below was a *bona fide* holder of the bonds which he put in suit. That he was such abundantly appears, and nothing that was offered at the trial tended in the slightest degree to show the contrary. Even the railroad company itself, when it took some of the bonds and gave its stock therefor, could have had no reason to suppose that every condition precedent to their issue had not been performed; and a subsequent purchaser, at any time prior to the time fixed for their final payment, must be regarded as a *bona fide* purchaser.

We have thus considered all the assignments of error that deserve particular notice, and all that were much pressed at the argument. The others are without the least merit. In our opinion, the law and the plainest dictates of justice demand an affirmance of this judgment.            *Judgment affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE DAVIS, and MR. JUSTICE FIELD, dissented.

NOTE. — The cases of *Town of Venice* v. *Woodruff et al.*, *Same* v. *Watson*, *Same* v. *Edson*, error to the Circuit Court of the United States for the Northern District of New York, were argued at the same time, by the same counsel, as *Town of Venice* v. *Murdock*.

MR. JUSTICE STRONG delivered the opinion of the court.

These cases are, in all essential particulars, like the case of *Town of Venice* v. *Murdock, supra,* p. 494; and the judgments are affirmed for the reason given in that case.            *Judgment in each case affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE DAVIS, and MR. JUSTICE FIELD, dissented.