## ORLEANS v. PLATT.

1. Where, upon the undisputed facts of the case, the plaintiff is entitled to recover, it is not error for the court to instruct the jury to find for him.
2. Where the testimony is all one way, a party is not entitled to instructions which assume that it is otherwise.
3. Where, pursuant to the authority vested in him by chapter 907 of the laws of New York, passed May 18, 1869, and the several laws amendatory thereof, the county judge renders judgment declaring that the conditions have been performed whereon a town in the county can lawfully subscribe for shares of the capital stock of a railroad company in that State, and issue its bonds to pay therefor, — *Held*, that the judgment, until reversed by a higher court, is conclusive.

4. In May, 1871, certain parties claiming to be a majority of the tax-payers, and to own the greater part of the taxable property of a town in New York, petitioned the proper county judge for an order that its bonds, to the amount of $80,000, should be issued to enable it to subscribe and pay for that amount of the capital stock of A., a railroad company. After hearing, he, July 1, 1871, ordered the bonds to be issued, and, pursuant to the statute, appointed three commissioners to execute and deliver them. Application was thereupon made by sundry tax-payers to the Supreme Court for a writ of *certiorari*, which was allowed, Sept. 30, 1871, and served upon him. The proper return was made. June 27, 1872, the Supreme Court affirmed the judgment. In July following, the case was taken to the Court of Appeals, where, solely upon the ground that he had refused the application of tax-payers to withdraw their signatures from the petitions, which, had it been granted, would have reduced the numbers and the taxable property represented below the statutory requirement, the previous judgment was, in February, 1873, reversed, with directions to dismiss the proceeding. April 3, 1872, the commissioners subscribed for eight hundred shares of the stock of A., and on the next day issued and delivered in payment one-hundred and sixty of the bonds of the town of $500 each, and thereupon received from A. scrip for the stock, which the town still holds. On the face of each bond was a certificate that it had been duly registered in the clerk's office of the county. A., Feb. 26, 1872, and May 31, 1873, entered into contracts with another railroad company, and at the latter date delivered as collateral security for the fulfilment of both contracts all the bonds to B., with authority to him to sell them and pay over the proceeds to the latter company. Feb. 4, 1874, the plaintiff purchased some of the bonds in good faith for a valuable consideration. He subsequently brought suit against the town to recover the amount due on the coupons. *Held*, that the plaintiff is entitled to recover.

5. *County of Warren* v. *Marcy* (97 U. S. 96) cited and approved.

ERROR to the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

*Mr. Levi H. Brown* for the plaintiff in error.

*Mr. Francis Kernan*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This suit was brought upon interest coupons belonging to alleged bonds of the town of Orleans, in the State of New York. There are thirteen assignments of error in the record. Ten of them relate to the admission or rejection of evidence. All these ten have been pressed upon our attention; but we think there is nothing in them. We shall, therefore, pass them by without giving to either of them special consideration. The proceedings

of the county judge touching the issuing of the bonds, and the bonds themselves, were sought to be excluded. This proceeded upon a misconception of the law of evidence. The plaintiff had a right to exhibit his case. These documents, according to his view, were links in his chain of title to recover. To shut them out would have been to condemn him unheard, and to give judgment against him without trial. The admissibility of testimony under such circumstances, and its effect after it is admitted and all the other evidence is in, are very different questions.

The twelfth assignment is that the defendant asked the court to submit to the jury, as distinct issues to be tried, the propositions whether the two railroad companies which had held the bonds and the plaintiff were *bona fide* holders, and that the court refused.

Where the testimony is all one way and is conclusive in its effect, a party has no right to ask a charge which assumes that it is otherwise. It would tend to create a doubt where none existed, or ought to exist, and might mislead the jury.

Admitting that there could be doubt as to the companies, a concession by no means necessary to be made, there could be none, as the case appears in the record, with respect to the plaintiff. The inquiry was, therefore, immaterial as to them, and wrong as to him. The court properly declined to accede to the request.

The tenth and eleventh assignments charge error in the refusal of the court to direct the jury to find for the defendant. The former relates to a general request and refusal; the latter, to a request upon twelve specified-grounds, with the same result.

The last assignment complains that the court directed the jury to find for the plaintiff.

It is well settled in the jurisprudence of this court, that if the facts are clearly established and are undisputed, it is competent for the court to give such a charge.

In one of the cases brought before us, where it had been done, the practice was commended, and it was remarked that " it gives the certainty of applied science to the results of judicial investigation." *Merchants' Bank* v. *The State Bank*, 10 Wall.

604. In whose favor the charge should have been given will appear by the result of our examination of the case.

We have already adverted to the good faith of the defendant in error as a purchaser. When he bought, he gave his negotiable notes, payable at different times, for the purchase-money.

The consideration was sufficient. 1 Daniel, Negotiable Securities, 584. Whether the notes were absolute, presumptive, or conditional payment, or only special collaterals to the amount to be paid, are points upon which there is great conflict in the authorities. 1 Parsons, Notes and Bills, 151, c. 7. We need not consider the subject in this case.

The plaintiff was not bound to allow his paper to go to protest, and take the hazards of the litigation which would have followed. The refusal to pay the note first due, upon the ground of the want of consideration, would doubtless have led to the transfer of the other notes, all under-due, and as to them, in that case, there could have been no defence. But irrespective of this, there could have been none upon the merits.

In *Otis et al.* v. *Cullom, Receiver* (92 U. S. 447), a city bond issued in Kansas was sold to the plaintiffs in New York. This court, on the ground that the legislature had no power to pass the act under which the bond was issued, adjudged it void. The plaintiffs subsequently sued to recover back what they had paid for it. This court held that in such cases there is only an implied warranty of title and genuineness, and that if there were no guaranty, and no fraud or misrepresentation on the part of the vendor in selling, the plaintiffs could not recover. It was said that such instruments pass from hand to hand like bank-notes, and that, if invalid, the law would not inflict the hardship of compelling every one who had passed them to pay back what he had received from his transferee. This case followed *Lambert* v. *Heath* (15 Mee. & W. 486), in which the same point was ruled in the same way.

The important question here is, whether the bonds were wholly void, — like a promissory note given for a gaming consideration, and made a nullity by statute, — or whether they were of such a character that a *bona fide* holder could enforce them like any other commercial security, free from infirmity.

It is not denied that the statutory authority to issue them

under the circumstances designated was ample and valid. In this respect our attention has been called to no defect; no question has been raised upon the subject.

Parties claiming to be a majority of the tax-payers, and to own the greater part of the taxable property of the town, petitioned the county judge for an order that the bonds of the town, to the amount of $80,000, should be issued to enable it to subscribe and pay for that amount of the capital stock of the Clayton and Theresa Railroad Company. After hearing the petitioners and their opponents at the appointed time, the judge, on the 1st of July, 1871, ordered the bonds to be issued, and, pursuant to the statute, appointed three commissioners to execute and deliver them. An application was thereupon made by the dissatisfied parties to the Supreme Court for a writ of *certiorari*. The writ was allowed on the 30th of September, 1871. It was served upon the county judge, and he made the proper return. On the 27th of June, 1872, the Supreme Court, at a general term, affirmed the judgment. In the month of July following, the case was taken to the Court of Appeals, and in February, 1873, that court reversed the previous judgments and ordered the petition to be dismissed.

On the 3d of April, 1872, the commissioners appointed by the county judge subscribed for eight hundred shares of the stock of the railroad company, amounting to $80,000, and on the next day issued and delivered in payment one hundred and sixty of the bonds of the town of $500 each, and thereupon received from the company scrip for the stock, which the town still holds. On the face of each bond was a certificate that it had been duly registered in the clerk's office of the county. The coupons in suit in this case were attached to one hundred and forty of these bonds. On the 26th of February, 1872, and on the 31st of May, 1873, the Clayton and Theresa Railroad Company entered into a contract with the Utica and Black River Railroad Company, and at the date of the second contract delivered all the bonds to Isaac Maynard, as collateral security for the fulfilment of both contracts, and with authority to him to sell the bonds and pay over the proceeds to the latter company. On the 4th of February, 1874, Maynard sold to the plaintiff the bonds here in question, under the circumstances before stated.

The Court of Appeals reversed the judgment of the county judge, solely upon the ground that when the case was before him he had refused to allow tax-payers who had signed the petition to withdraw their signatures, although applications for that purpose were made, and if it had been permitted, the numbers and taxable property represented would have been below the standard required by the statute to authorize the judgment that was rendered. It does not appear that any other objection was made by the contestants. *People ex rel.* v. *Sawyer*, 52 N. Y. 296. The previous reported adjudications are said to have been all contrary to this decision; none of them, however, were by the court of last resort. *Matter of Tax-payers of Town of Greene*, 38 How. Pr. (N. Y.) 515; Mem. of Decisions of Sup. Court, fols. 281, 282. See also *People* v. *Mitchell*, 35 N. Y. 555.

The bonds showed no defect upon their face. They purported to be issued by virtue of certain specified acts of the legislature, and set forth that the " commissioners, under the acts above referred to, for the town of Orleans, . . . upon the faith and credit and on behalf of said town, and confirmed by a majority of the tax-payers, representing a majority of the taxable property of the same, according to said acts, for value received, do hereby promise," &c.

When the county judge appointed the commissioners to issue the bonds, it was made their duty to proceed " with all reasonable despatch." They were not parties to the proceedings upon the *certiorari*, and hence were not directly affected by them. The same remarks apply to the corporation that received the bonds in payment for its stock. It is expressly provided by statute that in case of disagreement of the commissioners touching the issuing of the bonds the Supreme Court may decide and direct what shall be done, and that " said court . . . shall have power at any time, by injunction, to prevent the issue of said bonds, or any part thereof, on notice and for good cause shown; and any judge of said court may grant a temporary injunction until such motion can be heard." Laws of 1871, vol. ii. p. 2119, c. 935, sect. 5. In this case, a preliminary injunction might and should have been procured forbidding the commissioners to issue the bonds, and the railroad

company, if it received them, from parting with them, until the case made by the *certiorari* was finally brought to a close. This would have involved only an ordinary exercise of equity jurisdiction. *State of Illinois* v. *Delafield*, 8 Paige (N. Y.), 527 ; s. c. on appeal, 2 Hill (N. Y.), 160. The omission was gross laches. This negligence is the source of all the difficulties of the plaintiff in error touching the bonds. The loss, if any shall ensue, will be due, not to the law or its administration, but to the supineness of the town and the contestants. *County of Ray* v. *Van Syckle*, 96 U. S. 675.

Where one of two innocent persons must suffer a loss, and one of them has contributed to produce it, the law throws the burden upon him, and not upon the other party. *Hern* v. *Nichols*, 1 Salk. 289; *Merchants' Bank* v. *State Bank*, 10 Wall. 604.

The bonds in question have all the properties of commercial paper, and in the view of the law they belong to that category. *Murray* v. *Lardner*, 2 Wall. 110. This court has uniformly held, when the question has been presented, that where a corporation has lawful power to issue such securities, and does so, the *bona fide* holder has a right to presume the power was properly exercised, and is not bound to look beyond the question of its existence. Where the bonds on their face recite the circumstances which bring them within the power, the corporation is estopped to deny the truth of the recital. *Mercer County* v. *Hacket*, 1 id. 83 ; *San Antonio* v. *Mehaffy*, 96 U. S. 312 ; *County of Moultrie* v. *Savings Bank*, 92 id. 631 ; *Moran* v. *Commissioners of Miami County*, 2 Black, 722 ; *Knox* v. *Aspinwall*, 21 How. 539 ; *The Royal British Bank* v. *Turquand*, 6 El. & Bl. 325.

A corporation is liable for the acts of its servants while engaged in the business of their employment, to the same extent that individuals are liable under like circumstances. *Philadelphia, Wilmington, & Baltimore Railroad Co.* v. *Quigley*, 21 How. 209 ; *Greene* v. *London Omnibus Co.*, 8 C. B. N. S. 290 ; *The Life and Fire Insurance Co.* v. *Mechanics' Fire Insurance Co. of New York*, 7 Wend. (N. Y.) 31.

The doctrine of *lis pendens* has no application to commercial securities. *Murray* v. *Lylburn*, 2 Johns. (N. Y.) Ch. 441 ;

*Kieffer* v. *Ehler,* 18 Pa. St. 388; *Stone* v. *Elliott,* 11 Ohio St. 252; *Mims* v. *West,* 38 Ga. 18; *Leitch* v. *Wells,* 48 N. Y. 585; *County of Warren* v. *Marcy,* 97 U. S. 96. See, in the case last named, Mr. Justice Bradley's full examination of the subject.

The county judge was the officer charged by law with the duty to decide whether the bonds could be legally issued, and his judgment was conclusive until reversed by a higher court. *Lynde* v. *The County,* 16 Wall. 6; *Township of Rock Creek* v. *Strong,* 96 U. S. 271. The plaintiff had no notice, actual or constructive, of the proceedings in the case subsequent to the first judgment, and is in nowise affected by them.

*The County of Warren* v. *Marcy* (*supra*) is in effect decisive of the case in hand. There the board of supervisors claimed to be authorized by a popular vote to subscribe for the stock of a railroad company, and to pay in county bonds to be issued by themselves. A tax-payer filed a bill in the county Circuit Court, and procured a preliminary injunction prohibiting the issue of the bonds. Before the final hearing this injunction was dissolved; at the final hearing the bill was dismissed. There had been no injunction in force after the preliminary injunction was disposed of.

The complainant appealed to the Supreme Court of the State. There, in due time, the decree of the lower court was reversed, and the case was remanded with directions to enter a decree in conformity to the prayer of the bill. But between the time of the dissolution of the preliminary injunction and the final hearing in the court below the supervisors subscribed for the stock and issued the bonds.

The same question arose as to the bonds there as here.

This court held that in the hands of a *bona fide* holder they were free from objection and could be enforced.

Our examination of this case with respect to the bonds here in question constrains us to come to the same conclusion.

There is no difference between the two cases in any material point.

We think the instruction given by the court below to the jury was correct.

*Judgment affirmed.*

MR. JUSTICE BRADLEY did not sit in this case.