SALISBURY *v.* MERRIMACK COUNTY.

59   359
68   284
68   361
59   359
72   541

County commissioners have all the powers, in relation to the support of paupers, possessed by the court of general sessions of the peace under the act of 1791.

An order of county commissioners allowing a claim of a town against the county for the support of a pauper, so long as it is not reversed or modified, has the effect of a judgment in favor of the town against the county, as an adjudication that the county was chargeable with the support of the pauper.

CLAIM, for the support of Abigail Gould, alleged to be a county pauper. A disagreement arising between the plaintiffs and the county commissioners, the claim was referred, under Gen. Laws, c. 25, s. 10, to the court for decision.

The alleged pauper has lived in Salisbury substantially all the time since 1855. February 14, 1876, the county commissioners, on the usual evidence, such as is described in Gen. Laws, c. 83, s. 14, allowed a claim in favor of the plaintiffs for her support from August, 1875, to February, 1876, and since that time until the present claim arose she has been treated as a county pauper, and the claims for her support have been allowed and paid by the county. The question as to the effect of the allowance of the claim by the county commissioners was reserved.

*Shirley*, for the plaintiffs.

*Greene*, solicitor, for the defendants.

STANLEY, J. By the act of 1791, the court of general sessions of the peace were required to examine and adjust the claims of towns for the support of paupers who had no settlement in the state, and, upon the certificate of the court to that effect, such claims were paid, upon the order of the president with the advice of the council, from the state treasury. This court were to make such order as should appear just, and there was a right of appeal to any party aggrieved. Laws of 1805, *pp.* 300, 303.

By the act of 1794 the jurisdiction of the court of sessions, as to all matters except granting taxes, was taken away, and the powers theretofore exercised by that court were vested in the court of common pleas. Laws 1805, *p.* 68. It then became the duty of the court of common pleas to adjust the claims of towns for the support of poor persons who had no settlement in this state, and make such order thereon as should appear just; and the governor, with the advice of the council, was authorized to pay the claims thus allowed from the public treasury. From the decision of this court there was no appeal. Laws of 1805, *p.* 68.

In December, 1828, the previous statutes on this subject were modified so as to require such claims to be presented within one year to the court of common pleas for the county wherein the town (claimant) was, and, upon the allowance of the claim, it was paid from the county treasury. Laws of 1830, *p.* 305, *s.* 9. From this allowance there was no appeal; and we have found no case in

which any exception was taken to the order of court on such claim, nor any case where there was any attempt to enforce a claim on behalf of a town against the county where it had been rejected by the court. The order of the court was treated as final; and, on the question whether the county were liable, it had the effect of a judgment, conclusive upon both the claimant and the county. This was the condition of the law on this subject from 1828 to 1855, when the board of county commissioners was established. By the statute establishing the office of county commissioners and defining their duties, they were charged with the examination and allowance of all claims arising from or incident to the support and maintenance of county paupers, subject to the revision of the court of common pleas, and in the disposal and support of county paupers were invested with all the power then possessed by the court of common pleas. They were required to keep records of their doings, and deposit them with the clerk of the court of common pleas, who was authorized to make and certify copies thereof when required. Laws of 1855, c. 1659, s. 37. The board of county commissioners, as thus constituted and invested, has existed since that time, possessed of, enjoying, and exercising the powers and discharging the duties conferred upon them by the act of 1855, without modification or change, save that upon the abolition of the court of common pleas all the powers enjoyed and exercised by that court were imposed upon and exercised by the supreme judicial court. The judiciary acts of 1874 and 1876 did not change or affect their powers, duties, or jurisdiction. This summary of the statutes on this subject leads to the conclusion that the action of the commissioners, as well as of the court of sessions and the court of common pleas, in matters relating to the settlement of paupers and the allowance of claims against the county for their support, was judicial; that their orders were in the nature of a judgment, final and conclusive.

Before allowing a pauper claim, the commissioners must be satisfied, by evidence, that the person for whose support the claim is made was poor and in need of relief; that no person or town in this state is chargeable with his support; and that the expenses claimed have been incurred by the claimant within one year, or, in case suit has been commenced against the town, within six months (G. L., c. 83, s. 1); and upon proof of these facts they are required to allow such sum as they deem reasonable,—not necessarily all that was paid. The decision of all these questions requires the examination of evidence and the exercise of judgment. These duties are judicial (Shirley v. Lunenburg, 11 Mass. 379), resembling the duties of fence-viewers, dividing fences between adjoining owners, and assigning to each his share to be built and maintained (Sanborn v. Fellows, 22 N. H. 473, 488); selectmen or inspectors, in correcting the check-lists and deciding upon the qualification of voters (State v. Smith, 18 N. H. 91; Gove v. Epping, 41 N.

H. 539; *Merrill* v. *Plainfield*, 45 N. H. 126, 134; *Gordon* v. *Farrar*, 2 Doug. (Mich.) 511); the action of selectmen and assessors in assessing taxes (*Edes* v. *Boardman*, 58 N. H. 580; *Stetson* v. *Kempton*, 13 Mass. 272); the action of the mayor in calling out the militia in case of riot (*Ela* v. *Smith*, 5 Gray 135); pilot commissioners (*Downer* v. *Lent*, 6 Cal. 94); supervisors in determining the necessity of a new bond (*People* v. *Supervisors*, 10 Cal. 344),—and many other cases of a similar character.    *Merrill* v. *Sherburne*, 1 N. H. 199, 204; *Hampstead* v. *Plaistow*, 49 N. H. 100; *Orleans* v. *Platt*, 99 U. S. 676, 683.

If, then, their acts are judicial, their decisions are in the nature of a judgment, and are conclusive on the questions on which the liability turns.    On this question the rule is said to be, that whenever any person or persons have authority to hear and determine any question, their determination is in effect a judgment, having all the incidents and properties attached to a similar judgment pronounced in any regularly created court of limited jurisdiction acting within the bounds of its authority.    Freem. Judg., *s*. 531.

On this view of the law, the act of the commissioners in 1876, allowing the plaintiff for the support of the pauper, was a judgment conclusive between these parties, establishing the fact that she had no settlement in this state, and that as a consequence the defendants were liable for her support.    It does not matter that it was the judgment of an inferior court, whose decisions might be revised or reversed.    The question decided was within the jurisdiction of the commissioners, and when they acted, their action was as binding as if it had been the judgment of a court of last resort (*King* v. *Hutchins*, 28 N. H. 574; *Hollister* v. *Abbott*, 31 N. H. 442; *Wingate* v. *Haywood*, 40 N. H. 437), and this, too, without regard to whether it was erroneous or not.    *State* v. *Richmond*, 26 N. H. 232; *Claggett* v. *Simes*, 31 N. H. 56; *White* v. *Landaff*, 35 N. H. 128; *State* v. *Weare*, 38 N. H. 314; *Bruce* v. *Cloutman*, 45 N. H. 37.    Here was a right of appeal to this court.    It is only where no such right exists that the proceedings of an inferior court can be inquired into.    *Gurnsey* v. *Edwards*, 26 N. H. 224.    If it were held that the action of the commissioners in 1876, in allowing a claim against the defendants for the relief of this pauper, not revised or modified, is not conclusive, the plaintiffs might be required to furnish proof in regard to her settlement every time a claim is made upon the defendants for her support.    Such a course would be attended with needless expense, and is unnecessary.    Our conclusion is, that the decision of the commissioners in 1876 established the fact that Abigail Gould was then a county pauper.

*Case discharged.*

FOSTER and ALLEN, JJ., did not sit: the others concurred.