PETER LANE *vs.* INHABITANTS OF THE TOWN OF EMBDEN.

Somerset.    Opinion June 7, 1881.

*Town bonds.  Recitals — binding upon the town.  Town records—construction of.
Special laws, 1868, c. 622, § 1.  "Bond."*

When by legislative enactment a town is empowered to raise money by a loan for a specified purpose, and the act is silent as to the officers who shall make the loan and issue the bonds, the municipal officers would be authorized to perform those duties; and before issuing the bonds, such officers must determine whether the town had executed the power conferred upon it in accordance with the provisions of the act, and their recital upon the face of the bond of the facts in regard to that matter as they had determined them to be, would be conclusive upon the town in an action by a bondholder for value to recover the amount of an interest coupon.

In its ordinary, popular signification, the word "bond" includes instruments not under seal by which the maker binds himself to pay money, or do some specified act, as well as instruments for like purposes under seal.

In construing town records, evidentiary of the action of the town, the words used are to receive their ordinary and popular signification, rather than their technical meaning.

ON REPORT.

Assumpsit on the following instrument :

"No. 30.            Town of Embden loan.            $30.00.

"The town of Embden will pay to bearer thirty dollars, at the treasurer's office in Embden, on the first day of July, 1878.

O. H. McFADDEN, Treasurer."

This coupon was cut from a bond issued by the defendant town, July 1, 1869, and of the following tenor :

"$500.00.                State of Maine.                No. 30.

Loan of town of Embden, Somerset railroad.

"Be it known, that the town of Embden will pay, at the treasurer's office in Embden, to the holder of this bond the sum of five hundred dollars in forty years from the date hereof, and will also pay, at the same place, the annual coupons hereto attached, as the same shall severally become due, value received.   In testimony whereof, we, the selectmen of said town, by virtue of authority conferred by the vote passed at a legal town meeting,

held therein, March 28, A. D. 1868, and by an act of the legislature, approved March 6, A. D. 1868, and in conformity thereto, do issue this bond with coupons attached, and have set our hands hereunto, and the treasurer has signed said coupons, at said Embden, this first day of July, A. D. 1869.

T. F. Boothby, <br> I. W. Adams, } Selectmen."<br> Amos Hilton,

Writ was dated March, 3, 1879.

Plea, general issue, with a brief statement, that the instrument declared upon in the plaintiff's writ was issued without legal authority and without consideration and is void.

Other material facts appear in the opinion.

By the terms of the report the law court was to render such judgment as the legal rights of the parties may require.

*Frye, Cotton and White,* for the plaintiff, cited : R. S., c. 51, § 80 ; Laws 1868, c. 622 ; Jones on R. R. Securities, § § 284, 320-326, 288, 291, 292 ; *Murray* v. *Lardner,* 2 Wall. 110 ; *Commissioners, &c.* v. *Clark,* 94 U. S. 278 ; *Cromwell* v. *County of Sac.* 96 U. S. 51 ; 1 Dillon, Mun. Corp. § § 405, 418, 419 ; *Aurora City* v. *West,* 7 Wall. 105 ; *San Antonio* v. *Mehaffy,* 96 U. S. 312 ; 2 Pars. Notes and Bills, 9 ; *Coloma* v. *Eaves,* 92 U. S. 484 ; *Warren* v. *Marcy,* 97 U. S. 96 ; *Grand Chute* v. *Winegar,* 15 Wall. 355 ; *East Lincoln* v. *Davenport,* 94 U. S. 801 ; *Miller* v. *Berlin,* 13 Blatch. 245 ; *Knox Co.* v. *Aspinwall,* 21 How. 539 ; *Venice* v. *Murdock,* 92 U. S. 494 ; *Commissioners, &c.* v. *Bolles,* 94 U. S. 104 ; *Rock Creek* v. *Strong,* 96 U. S. 271 ; *Hackett* v. *Ottawa,* 99 U. S. 86 ; *Orleans* v. *Platt,* 99 U. S. 676 ; *Block* v. *Commissioners,* 99 U. S. 686 ; *Mercer Co.* v. *Hacket,* 1 Wall. 83 ; *Moultrie* v. *Savings Bank,* 92 U. S. 631 ; *Moran* v. *Miami Co.* 2 Black, 722 ; *Gelpcke* v. *Dubuque,* 1 Wall. 175 ; *Lexington* v. *Butler,* 14 Wall. 282 ; *Supervisors* v. *Schenck,* 5 Wall. 782 ; *Deming* v. *Houlton,* 64 Maine, 254.

*D. D. Stewart,* for the defendants.

The form of this action is assumpsit, and this court has decided after argument and reargument of the same question, that

assumpsit cannot be maintained upon a coupon cut from a railroad bond; that it is a specialty, partaking of the nature of the bond, and that only debt or covenant can be maintained upon such a coupon. *Jackson* v. *York & Cumb. R. R. Co.* 48 Maine, 147, 152.

Upon examination, the alleged bond turns out to be no bond, but a mere certificate of indebtedness, or scrip or promissory note. It has neither penal sum, condition nor seal. It is not sealed, and does not purport or profess to be under seal. Authorities are not needed in support of a principle so familiar to every common-law lawyer,. that an instrument is never a bond unless ' actually sealed. A recital on its face that it is under seal, will not make it so, unless it actually bears a seal. *Boothbay* v. *Giles,* 68 Maine, 160 ; *Warren* v. *Lynch,* 5 Johns. 238.

"The term 'bond,' *ex vi termini,* imports a sealed instrument. All the definitions in the books describe a bond as a deed, or instrument under seal, and sealing has always been held to be a necessary requisite to its validity." 1 Burrill's Law Dict. 155, Bond.

The decisive effect of a seal, or the want of one, cannot be better illustrated than in the decisions of this court, in *Wheeler* v. *Nevins,* 34 Maine, 54 ; *Wing* v. *Chase,* 35 Maine, 260 ; *Baker* v. *Freeman,* 35 Maine, 485.

The allegation, therefore, in each of the special counts in the plaintiff's writ that the defendants issued bonds to the amount of forty thousand dollars, of one of which the plaintiff is the holder, is not supported by the proof offered.

Indeed, the proof offered is wholly inadmissible, because fatally variant from the declaration. *Stanwood* v. *Scovel,* 4 Pick. 423 ; *Buddington* v. *Shearer,* 20 Pick. 478 ; 1 Greenl. Evidence, § § 56, 57, 58, 60, 63 ; *Parsons* v. *Monmouth,* 70 Maine, 262.

It will be noticed that this act confers a special and specific power which must be strictly executed, or it will fail. Towns have no power to raise money for any such purpose unless authorized by specific legislative enactment. The town of Embden, under this act, could not legally raise money and appropriate it to aid any other railroad, or for any other possible object or pur-

pose. By the terms of this act the town is imperatively required to apply the money, if they vote to raise it, to aid in the construction of the Somerset railroad, and to determine the manner in which it shall be applied for that purpose ; and all this must be done by a vote of two thirds of the legal voters present and voting. If the money is not raised ; or if raised to aid in the construction of the Somerset railroad ; or if the manner in which it is to be appropriated for that purpose is not determined, and all by a two thirds vote, then there is an organic defect in the execution of the power conferred by the act, which will make void all securities or obligations attempted by the officers of the town, to be issued under it ; and all persons purchasing such securities, are chargeable with notice of such defective execution. "Dealers in municipal bonds," said the Supreme Court of the United States in a recent decision, "are charged with notice of the laws of the State granting power to make the bonds they find on the market. This we have always held. . . Every person who deals with or through an agent, assumes all the risks of a lack of authority in the agent to do what he does. Negotiable paper is no more protected from this inquiry than any other." *Anthony* v. *County of Jasper*, decided at October term, 1879, and reported in vol. 21, No. 20, Albany Law Journal, May 15, 1880, pages 397–8.

In *Marsh* v. *Fulton County*, 10 Wallace, 683, the same court say : "But it is earnestly contended that the plaintiff was an innocent purchaser of the bonds without notice of their invalidity. If such was the fact, we do not perceive how it could affect the liability of the county of Fulton. This is not a case where the party executing the instruments declared upon possessed a general capacity to contract, and where the instruments might for such reason be taken without special inquiry into their validity. . . It is a case where the holder was bound to look to the action of the officers of the county, and ascertain whether the laws had been so far followed by them as to justify the issue of the bonds. The authority to contract must exist before any protection as an innocent purchaser can be claimed by the holder. . . In each case the person dealing with the agent, knowing

that he acts only by a delegated power, must, at his peril, see that the paper on which he relies, comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards; for it is to be kept in mind that the protection which commercial usage throws around negotiable paper, cannot be used to establish the authority by which it was originally issued."

These votes were to issue town bonds, "the selectmen being authorized to sign said bonds when issued." No authority is conferred upon the selectmen to sign promissory notes, or scrip, or obligations of any kind, except bonds.

The instrument described in the plaintiff's writ, and offered in evidence by him, is not a bond. It is at most but a simple contract, a sort of certificate of indebtedness, a promissory note creating liabilities, if valid, widely different from those arising under bonds. It was solely for the town, and not for the selectmen, to determine the kind and character of the liabilities they were willing to assume. They had the right to rely upon the decision of this court in the case already cited, *Jackson* v. *York & Cumb. R. R. Co.* 48 Maine, 147, as the law of the State, defining the character and extent of the liabilities which would be created under an issue of bonds, holding that neither bonds nor coupons were negotiable paper within the law merchant, and therefore not liable to be scattered all over the State. *Almy* v. *Winslow*, 126 Mass. 343; *Lexington* v. *Butler*, 14 Wallace, 283.

None of these votes were passed by the requisite two thirds majority. The record is entirely silent upon that subject. This is fatal to the plaintiff's case. It is not a mere irregularity in the execution of a power, but a total failure to execute it in the manner required by the statute. Upon this question, the decision of this court in a very recent case, *Portland and Ogdensburg R. R. Co.* v. *Inhabitants of Standish*, 65 Maine, 63, is conclusive.

This opinion is decisive of the case at bar. The plaintiff was bound to know, and take notice of the condition and character of this record and of these votes, and must be held to know that they created no liability whatever on the part of the town, and

gave no authority to the selectmen to sign and issue any such instruments as are here declared upon. He is specifically referred to these insufficient votes by the very paper he purchased, and therefore purchased them at his peril, with full notice and knowledge of their invalidity. He is not, therefore, in any commercial sense, a *bona fide* purchaser. *Cushing* v. *Field*, 70 Maine, 50.

A coupon for interest is never valid, unless the bond is valid. *Concord* v. *National Bank*, 51 Vermont, 146.

LIBBEY, J. By special act of 1868, c. 622, § 1, the defendant town, with several other towns in Somerset county, was empowered, at any legal meeting duly notified and held for the purpose, to raise by tax or loan, such sum of money as it deemed expedient, not exceeding forty thousand dollars, and to appropriate the same to aid in the construction of the Somerset railroad, or extending the Somerset and Kennebec railroad, in such manner as it should deem proper, provided, that two thirds of the legal voters present and voting at such meeting, shall vote therefor.

At a legal meeting duly notified and held for that purpose on March 28, 1868, the inhabitants of the defendant town, by a vote of one hundred and thirty-two for to seven against, "Voted to raise the sum of forty thousand dollars to aid in the construction of the Somerset railroad, and the selectmen to issue town bonds therefor." The record discloses that several other votes were afterwards passed by them, without disclosing the number voting for or against, as follows :

1. To authorize the town agent for and in behalf of the town to subscribe for and take stock in the Somerset railroad to the amount voted. 2. To issue bonds for a term not exceeding forty years. 3. That the selectmen be authorized to sign said bonds when issued, and the treasurer to sign the coupons.

By authority of these votes certain instruments by their terms called bonds, but not under seal, were issued, duly signed as required by the vote of the town, and sold to raise the sum of money voted. The plaintiff for full value, without notice of any defence, bought one of these bonds for five hundred dollars, of the person holding it; and this action is brought on one of the interest coupons attached to the bond.

The bond contains the following recital : "In testimony where-of, we, the selectmen of said town, by virtue of the authority, conferred by the vote passed at a legal town meeting held therein, March 28, A. D. 1868, and by act of the legislature, approved March 6, A. D. 1868, and in conformity thereto, do issue this bond with coupons attached, and have set our hands hereto, and the treasurer has signed said coupons at said Embden this first day of July, A. D. 1869."

Payment is resisted by the defendants on two grounds.

1. That the power conferred upon the town by the statute was not executed in accordance with its provisions, because the record does not show that the vote prescribing the manner in which the aid should be furnished to the corporation was passed by the requisite majority.    2. That the vote of the town authorized the selectmen to issue the bonds of the town for the money loaned ; but the instruments issued were not bonds, not being under seal, and therefore issued without authority.

Questions very similar to the first point of the defence were determined by this court, in *Augusta Bank* v. *Augusta*, 49 Maine, 507, and *Deming* v. *Houlton*, 64 Maine, 254.

In *Augusta Bank* v. *Augusta*, the act under which the scrip was issued authorized the treasurer of the city, on the acceptance of the act by it, to issue the scrip of the city as therein provided.    The city denied that the act was ever legally accepted by it.    Upon this point the court, by TENNEY, C. J. says : "The act provides in no express terms for any tribunal which shall adjudge whether these various steps have been taken. It could not have been intended by the legislature, that this scrip should be issued, delivered to the directors of the rail-road, who should receive the amount of the same, and expend it in the construction and completion of the railroad, and the question be open to be presented on the trial of any action brought upon any piece of the scrip, whether the act was duly accepted, and the scrip had been issued, and sent into the world for a full consideration, after a compliance with every require-ment of that act.    The duty of deciding these questions was imposed upon the treasurer of each city and town.    He could

not issue the scrip till the act was accepted; he could not deliver the scrip to the directors till every necessary step had been taken to render the delivery proper. It was his province to see that every legal requirement was fulfilled as a condition of carrying out the great object of the act. It was, under the act, a matter of absolute necessity that he should be the judge of these matters, or he could not act at all in the premises." And the determination of the treasurer was held conclusive.

In *Deming* v. *Houlton, supra*, the doctrine of *Augusta Bank* v. *Augusta* was affirmed. The court, by APPLETON, C. J. says: "The bonds were issued by the proper authorities of the town. It was their duty to determine whether the preliminaries necessary to give validity to the bonds had been complied with before issuing them; and their determination is conclusive."

It may be said that these cases are not precisely in point in the case at bar, because in them the statute made it the duty of the officers named, on compliance with the requisite conditions, to issue the scrip; while in this case, the act is silent as to the officers who shall make the loan and issue the bonds. But we think the principle is the same in each case. It must have been in the contemplation of the legislature, that, if the town raised the money by loan, it would be made, and the bonds issued by its municipal officers; and that, before putting upon the market the commercial paper of the town to raise the money, they must determine whether the town had executed the power conferred upon it in accordance with the provisions of the act. It is worthy of remark, on this point, that the town, by vote of one hundred and thirty-two to seven, as well as by the subsequent vote, directed the selectmen to issue the bonds of the town for the money to be loaned, thereby, in substance, declaring that the requirements of the act had been complied with.

The bonds or scrip issued are negotiable and pass by delivery as commercial paper. They contain a certificate that the requirements of the statute have been complied with by the town, and that they are issued in conformity therewith. We think the law well settled, that, "if upon a true construction of the legislative enactment conferring the authority, the corporation, or certain

officers, or a given body or tribunal, are invested with power to decide whether the condition precedent has been complied with, then it may well be that their recital of their determination of the matter *in pais*, which they are authorized to decide, will, in favor of the bond-holder for value, bind the corporation." *Town of Venice* v. *Murdock*, 92 U. S. 494; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *St. Joseph Township* v. *Rogers*, 16 Wall. 644; *Orleans* v. *Platt*, 99 U. S. 676; *Buchanan* v. *Litchfield*, 102 U. S. 278.

In *Orleans* v. *Platt*, the court, (SWAYNE, J.) declares the rule thus: "This court has uniformly held, when the question has been presented, that where a corporation has lawful power to issue such security, and does so, the *bona fide* holder has a right to presume the power was properly exercised, and is not bound to look beyond the question of its existence. Where the bonds on their face recite the circumstances which bring them within the power, the corporation is estopped to deny the truth of the recital." (See authorities cited.)

This rule inflicts no unjust hardship upon the defendant town and its tax payers. They knew the vote of the town directing the selectmen to loan the money and issue the bonds; and that they were proceeding to issue them. If they had no legal authority for so doing, the tax payers might have applied to this court for an injunction to restrain them from proceeding. It was their duty to have done so. In *Orleans* v. *Platt, supra*, SWAYNE, J. in discussing a similar point, says: "In this case a preliminary injunction might and should have been procured forbidding the commissioners to issue the bonds, and the railroad company, if it received them, from parting with them until the case made by the *certiorari*, was finally brought to a close. This would have involved only an ordinary exercise of equity jurisdiction" (citing authorities.) "The omission was gross laches. This negligence is the source of all the difficulties of the plaintiff in error touching the bonds. The loss, if any should ensue, will be due, not to the law or its administration, but to the supineness of the town and the contestants." *County of Ray* v. *Vansyckle*, 96 U. S. 675.

But instead of instituting proper proceedings to prevent the evil, the town and its tax payers stood by and saw the selectmen issue the bonds, put them on the market, and raise the money with them for the benefit of the town ; and now, after the bonds have passed from hand to hand as commercial paper for years, payment is resisted because of an irregularity on the part of the town in exercising the power conferred upon it. The well established rules of law will not sanction such a defence.

*Portland and Ogdensburg R. R. Co.* v. *Standish*, 65 Maine, 63, is relied upon by the learned counsel for the defendants, as decisive of the case in their favor. But the question involved in that case, was entirely different from the one in issue in this. That was an action to enforce a subscription for stock voted by the town. It was between the parties to the alleged contract. No subscription had been, in fact, made. The action was based upon the validity of the vote alone. The town might well say it had passed no legal vote to subscribe for the stock.

The second ground of defence is alike untenable. The same question was before this court in *Augusta Bank* v. *Augusta*, *supra*. In that case it was contended that the coupons in suit, being cut from scrip issued by the city without seal, were not within the provisions of the statute relied on, as the statute embraced coupons cut from *bonds* only. But the court held otherwise, TENNEY, C. J. in the opinion of the court, remarking that : "The term bond has a great variety of significations, and in law it does not necessarily import a seal as the word is ordinarily used." To like effect is *Stone* v. *Bradbury*, 14 Maine, 185.

In *Deming* v. *Houlton*, *supra*, the act of the legislature authorized the town treasurer to issue scrip, and he issued the bonds of the town and this court held them valid. In *Town of Venice* v. *Murdock*, 92 U. S. 494, the statute authorized the issue of bonds of the town. The instruments issued were similar to those issued by town of Embden, having no seal, and not purporting to be sealed ; but the court in speaking of them in the opinion uniformly calls them *bonds*.

In *Humboldt Township* v. *Long*, 92 U. S. 642, the statute authorized the issue of bonds ; but the instruments issued were certificates not under seal ; and the court in speaking of them, characterizes them as certificates of indebtedness, bonds, and contracts, interchangeably.   In both cases the instruments were held valid.

In *Scipio* v. *Wright*, 101 U. S., 665, the statute authorized the raising of money by the issue of bonds, but the instruments issued were mere promises not under seal.   STRONG, J. in the opinion of the court, says :   "The plaintiff below brought suit upon twenty-five bonds, or rather, notes," but when the instruments are afterwards referred to in the opinion he uniformly calls them bonds.   All that were issued for money loaned were held valid.

The foregoing authorities sustain the position, that, in its ordinary, popular signification the word bond includes instruments not under seal, by which the maker binds himself to pay money, or do some act specified, as well as instruments for like purposes under seal.

In construing town records, evidentiary of the action of the town, the words used are to receive their ordinary and popular signification, rather than their technical meaning.   The vote of the town, directing the officers to issue the bonds of the town, for the money loaned, authorized them to issue the instrument in suit.

> *Judgment for the plaintiff for the amount of the coupon declared on with interest from date of the writ.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.