## S. S. WHITE DENTAL CO. *v.* SIBLEY.

*(Circuit Court, E. D. Pennsylvania.* May 10, 1889.)

**1. COPYRIGHT—INFRINGEMENT.**

The plaintiff's assignor devised and copyrighted a chart showing "gum sections" of artificial teeth of his manufacture, each section being arranged in a certain way, and having thereon certain auxiliary lines and figures, by means of which the dentists who used said "gum sections" could obtain information that could not be conveyed by any old method of illustration. Defendant made a similar chart, in which his teeth were illustrated in the same manner as complainant's. *Held* plaintiff's copyright did not cover the plan or arrangement of the gum sections of his chart, and therefore defendant did not infringe.

**2. SAME—PIRACY.**

To infringe a copyright the defendant must have actually copied or "pirated" the production of the plaintiff, and not merely, while ignorant of it, have made something similar.

*(Syllabus by the Court.)*

In Equity.

Bill by the S. S. White Dental Manufacturing Company against Gideon Sibley, to restrain infringement of copyrighted chart of artificial teeth.

*Jos. C. Fraley,* for complainant.

*Joshua Pusey,* for defendant.

BUTLER, J.  The plaintiff's assignor devised an ingenious plan for advertising artificial teeth.  By the publication of charts showing illustrated sections of teeth, (in connection with numbers,) so arranged as to convey information respecting their character, size, shape, etc., purchasers are enabled to order what they need without inspection.  The object is well stated in the complainant's argument, as follows:

"The object of thus including the copyrighted matter in a general catalogue was as follows: Complainant is the leading manufacturer of artificial teeth in the world; its last year's sales amounting to the neighborhood of seven millions of teeth.  About one-half of these were manufactured and sold in groups of several teeth connected together, and called 'gum sections,' one of which is offered in evidence as 'Complainant's Exhibit, Gum Section.' These sections are of course used in making sets of artificial teeth, and imitate, as closely as possible, in size and arrangement, the various groups of teeth and configurations of gum found in the human mouth.  Certain definite types in the shape of the teeth, and the curvature of the section, are well recognized as characteristic, and are made by all manufacturers.  Where a dentist resides in the neighborhood of a dental depot he can, if he so desires, bring the mould or impression made from the mouth, directly to the store, and by actually trying the sections therein, obtain one which will fit the mould.  Where, however, he resides at a distance, or for other reasons does not make the selection with the mould and the section of teeth actually in his hands, he must, perforce, order the sections from a dealer by mail or otherwise."

The object is further illustrated by the following testimony of Dr. Starr:

"(a) It is the custom of the house to issue from time to time catalogues containing pictorial representations of goods they are placing before the profession, and, among other things, artificial teeth. The difficulty has been to convey a proper representation of artificial teeth. Illustrations heretofore have been made which do not convey a correct representation, as in all selections for teeth in the mouth the central incisor is taken as a key to the whole set, and such representations did not convey a correct representation of that tooth. Therefore my inventive qualities were set to work to devise some means of giving such a correct representation, not only of the profile view of its size as to length and width, but also the outline view of its anterior surface, giving its curvatures with the relation to its gum, and the curvature or arrangement of the adjoining teeth, making up one-half of the curvature of the arch of the maxillary ridge. This view was designed to fit the opposing teeth in the opposite jaw, also the curvature line of the upper margin of the gum. As these two curves are never to be found alike in a mouth where teeth have been lost, (as, after extraction, the process in which the roots of the teeth are imbedded absorbs, changing the arch,) it is necessary, in mounting a set of teeth, to first not only ascertain the median line of the face, but the fullness or inclination of the tooth. This arrangement of cuts or illustrations was so placed as to convey to the dentist at a glance the pitch of this central tooth, and the relation of the adjoining teeth to it."

The plaintiff, a manufacturer of artificial teeth, published and filed copies of the charts, and in other respects complied with the statute relating to copyrights. The defendant, also a manufacturer of artificial teeth, procured engraved illustrations of his teeth, arranged in sections, (accompanied by numbers,) and printed them on charts; and thus conveyed to purchasers the same character of information respecting his manufacture as the plaintiff's charts afford. Neither the teeth nor the numbers are the same as the plaintiff's, either in fact or appearance. The object of the defendant's charts, however, and the plan of conveying information, as well as the information conveyed, are in character the same. It is thus seen that the defendant has not copied and published the plaintiff's charts, but has employed simply the same plan of advertising his own manufacture. That he has done more cannot justly be urged. Has he trespassed upon the plaintiff's rights by so doing? Without considering the question whether the plaintiff has secured a valid copyright for anything, it is sufficient to say that we are well satisfied he has not secured a monopoly of this plan. The copyright laws do not embrace such an object. It could be secured, if at all, only by letters patent. That it could be thus secured we do not mean to suggest. To enlarge upon this point would not be profitable. Its truth, indeed, seems so obvious as to forbid, if not preclude, enlargement. The subject is exhausted by the few lines devoted to it by the court in *Perris* v. *Hexamer*, 99 U. S. 676:

"It needs no argument to show that the defendant's maps are not copies, either in whole or in part, of the plaintiff's. They are arranged on the same plan, but those of the defendant represent Philadelphia, while the plaintiff's represent New York."

This language is as applicable here as it was there. Independently of this, however, and in any view that can be taken of the case, the de-

fendant is not liable, unless he has copied—"pirated"—the plaintiff's charts, or some part of them. If he devised the same plan in ignorance of what the plaintiff had done, it is clear, we believe, that he has not infringed any privilege secured by the plaintiff. The proofs do not justify a conclusion that he has so copied. His own positive testimony that he has not, but that he worked out the scheme in ignorance of what the plaintiff had done, is not overborne by the circumstances which the plaintiff invokes to prove the contrary. *Emerson* v. *Davies*, 3 Story, 768, on which the plaintiff mainly relies for the support of his legal proposition, does not, in our judgment, sustain him. The question there, as repeatedly stated by the court, was whether the defendant had piratically copied the plaintiff's work. It was not doubted that he was not liable to the charge of infringement unless he had.